## MARTIN v. UNITED STATES.*

### WENTZELL v. SAME.

(Circuit Court of Appeals, Fifth Circuit. March 16, 1927. Rehearing Denied April 15, 1927.)

Nos. 4878, 4879.

1. **Conspiracy** ⊂⇒47—**Evidence held to sustain conviction for conspiracy to illegally import, transport, and sell liquor.**

Evidence considered, and *held* to sustain conviction for conspiracy to illegally import, transport, and sell intoxicating liquor.

2. **Criminal law** ⊂⇒423(3)—**Promise by one conspirator to pay sheriff for permission to transport liquor held admissible against others.**

On trial of defendants, charged with conspiracy to illegally transport and sell intoxicating liquor, testimony of a sheriff that during the time the conspiracy was alleged to be in existence one of the defendants offered to pay him for permission to transport liquor through his county *held* admissible against all defendants.

3. **Criminal law** ⊂⇒942(2)—**New trial should be granted where witness to material facts admits falsity of testimony.**

It is the duty of a trial court to grant a new trial, where a witness at the trial admits on oath that he committed perjury, or even that he was mistaken in his testimony, provided such testimony related to a material issue and was not merely cumulative.

4. **Criminal law** ⊂⇒958(6)—**Showing of perjured testimony held insufficient to warrant grant of new trial.**

Affidavit of witness 19 years old, who gave material testimony on trial of a criminal case, stating that such testimony was false, *held* insufficient to move an appellate court to authorize the trial court, to entertain a motion for new trial, where it was contradicted by a second affidavit, and where it was signed in another state, where the witness was taken among strangers and the affidavit already prepared was presented to him, and he was urged and finally induced to sign it.

In Error to the District Court of the United States for the Northern District of Florida; Wm. B. Sheppard, Judge.

Criminal prosecutions by the United States against Peter Martin and against Louis Wentzell. Judgments of conviction, and defendants bring error. Affirmed.

S. C. Mize and J. H. Mize, both of Gulfport, Miss., and J. McHenry Jones and P. D. Beall, both of Pensacola, Fla., and Edw. Dinkelspiel, of New Orleans, La. (John C. Davey, of New Orleans, La., on the brief), for plaintiff in error Martin.

*Rehearing denied April 15, 1927.

S. C. Mize and J. H. Mize, both of Gulfport, Miss., and J. McHenry Jones and P. D. Beall, both of Pensacola, Fla., for plaintiff in error Wentzell.

Fred Cubberly, U. S. Atty., of Gainesville, Fla., and G. E. Hoffman, Asst. U. S. Atty., of Pensacola, Fla.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. Peter Martin and Louis Wentzell were convicted as charged in an indictment brought against them and a number of other defendants under section 37 of the Criminal Code (Comp. St. § 10201) alleging a conspiracy to import, transport, possess, and sell intoxicating liquors for beverage purposes, in violation of the National Prohibition Act (Comp. St. § 10138¼ et seq.). Several overt acts to effect the object of the conspiracy were set forth and proved by the testimony.

An assignment of error is to the effect that the indictment was insufficient, in that it failed to allege a conspiracy entered into within the jurisdiction of the court, and what offenses the defendants conspired to commit. The same form of indictment has been upheld by this court, although it need not be denied that it contains much superfluous language. A conspiracy is finally and directly alleged to commit certain definite acts that are offenses against a law of the United States. There is another assignment which complains that the court refused to charge that possession of liquor created no presumption against defendants, but the bill of exceptions shows that the court gave the charge as requested.

The principal assignments of error are that the court refused at the close of all the evidence to direct the jury to find defendants not guilty, and that during the progress of the trial the court admitted, over objection and exception, testimony of the sheriff of Calhoun county relating to a conversation which he had with Wentzell, in which the latter asked for permission to transport liquor through that county. It is undisputed that defendants, in August of 1925, left Biloxi, Miss., where they had been living, and went to Gulf county, Fla.; that they bought a tract of land in that county lying on Wetappo creek; that the purchase price of $1,600 was paid by Martin, though the title was taken in Wentzell's name; that Wetappo creek was navigable, and opened into a canal which connects Apalachicola Bay and St. Andrews Bay.

There was evidence for the government to the following effect: After the purchase of the land, a camp was established on Wetappo creek. A fence was built around it, and a gate at the entrance was kept locked. There were four houses, one of which had a large basement underneath, which was reached through a trapdoor. Wentzell remained at this camp. Martin continued to reside in Biloxi, but made at least three visits to the camp. A boat 65 feet long was used in connection with the enterprise, and could get into the Gulf either by way of St. Andrews Bay or Apalachicola Bay. At least on one occasion a trip was made into the Gulf, and a large quantity of liquor was obtained from another boat outside, and brought back to camp. A number of sales were made from time to time until April 1926, when prohibition officers made a raid and seized the boat, with a large quantity of liquor on board, and arrested several of the defendants. Martin was not present. At that time Wentzell admitted the boat and liquor belonged to him. Some time before the seizure and arrest, Wentzell offered to pay money to the sheriff of the adjoining county of Calhoun for permission to sell liquor in and to transport liquor through that county.

Among the witnesses who testified for the government was Paul Parker, 19 years old, who lived at Panama City, a distance of about 40 miles from the camp. He testified that he made two trips to the camp in December of 1925; that on the first trip he saw Martin there, and saw him deliver liquor to a young man, with whom the witness had come from Panama City; that on the second trip the witness himself purchased 24 quarts of liquor from Martin, and paid him $100 for it. Martin contradicted the testimony of Paul Parker, and testified that, while he had been at the camp on three occasions, he had never seen or sold any liquor there. He further testified that he lent $1,600 to Wentzell to pay for the land, thinking that it was being bought for the purpose of planting an orange grove, but did not claim that he had taken any security for the loan, or that any orange trees were planted. [1, 2] The trial court did not err in refusing to direct a verdict in favor of either Martin or Wentzell. It was for the jury to determine whether Martin's money was advanced to Wentzell for the purpose of putting out an orange grove, or as his contribution to the conspiracy. The uncontradicted testimony is that Wentzell admitted owner-

ship of the boat and the liquor. The only ground on which he claims that he was entitled to acquittal is that the evidence only showed unlawful possession, and was insufficient to prove a conspiracy. To say the least, it is a fair inference that the importation, transportation, and sale of the liquor were in pursuance of a prearranged plan, and required the activities of more than one person. What has been said disposes of Wentzell's objection to the sheriff's testimony. That testimony was admissible against Martin, because it related to a statement made by a co-conspirator during the existence of the conspiracy.

Martin has also filed a petition to this court for permission to apply to the District Court for a new trial on the ground that the witness Paul Parker, since the trial, has signed an affidavit to the effect that his testimony given at the trial was false. In support of this petition a copy of an affidavit signed by Parker, and dated August 3, 1926, is submitted, in which, after outlining his testimony, it is stated: "Said Paul Parker now wishes to state and does state that all of said testimony was false and untrue, and now wishes to correct it; that he knows nothing whatever of Martin's connection with any whisky." That affidavit was filed in this court on January 11, 1927.

On February 28, 1927, the district attorney submitted a counteraffidavit by Paul Parker, made before a United States commissioner, dated February 2, 1927, in which Parker stated in substance: "On the day before I signed the affidavit in Mobile, I was sent by the Polk Motor Company from Panama City to Mobile, in company with Irving King, thinking that I was to be used to drive a Hudson automobile back to Panama City. After arriving in Mobile I went to the Hudson agency, and there met Mr. N. Kraus, who engaged me in conversation about Martin's trial, which took place in Pensacola in May, 1926. I never told Kraus anything different from what I testified to at the trial. About noon he showed me a paper. I glanced over it. Kraus said it would not get me into trouble; that Peter Martin was not working for that, but was trying to clear himself; and that he and Martin were close friends. I said I expected I had better call up the assistant district attorney in Pensacola, who tried the case, and ask him what he thought about it. Kraus said that would not be necessary. I asked for permission to take the affidavit and study it. Kraus said he would be back after dinner, and that I could then study it over, but he would not leave it with me. When I read the affidavit, I did so with two or three interruptions from Kraus, and never got enough time to consider it. I told Kraus I did not like that part of the affidavit which stated that what I said at the trial was false, and that what I testified to at the trial was true. He said that I could explain to the Circuit Court of Appeals what part was true and what part was not true, but he insisted on my signing it just as it was. After I signed it, King told me that the automobile agency in Mobile did not have any automobiles for us to drive, and he and I left Mobile that night, or the next night, and came on back to Panama City [presumably by train]. Parker then reiterated that his testimony at the trial was true.

An affidavit by Kraus, dated March 1, 1927, was filed here on the next day, being the day on which this case was argued and submitted. In his affidavit Kraus states that he had been advised of Parker's counteraffidavit; that he did not persuade Parker to sign the Mobile affidavit, but that Parker signed it of his own free will and accord, with full knowledge of its contents, after retaining possession of it for an hour or more, and made no objection to signing it; that he did not interrupt or interfere with Parker while the latter was reading the affidavit; that Parker did not say that what he had testified to at the trial was true, but, on the contrary, stated that it was false; that affiant did not tell Parker he could go before the Circuit Court of Appeals and explain his affidavit, and did not prevent him from telephoning to the assistant district attorney at Pensacola; and "that the said Paul Parker stated to affiant that he would like to amend the affidavit, and say that he was mistaken in his testimony, rather than say that it was false, and that affiant thereupon told Paul Parker that that would do Peter Martin no good, and that, if he did not want to sign it like it was, that it was all right not to sign it, but that, if it stated facts then for him to sign it as it was, and the said Paul Parker thereupon said that he wanted to think about it, and took the affidavit into his own possession, and retained it something like an hour or more out of the presence of affiant, and, having thus retained it, told affiant that he would sign it just as it was, and thereupon voluntarily went before the notary public in company with affiant and signed the same."

[3] In our opinion it is the duty of a trial court to grant a new trial, where a witness at the original trial subsequently admits on oath that he committed perjury, or even that he was mistaken in his testimony, provided such testimony related to a material issue, and was not merely cumulative. Bussey v. State, 69 Ark. 545, 64 S. W. 268; State v. Mounkes, 91 Kan. 653, 138 P. 410, 51 L. R. A. (N. S.) 286. In 20 R. C. L. 300, it is stated that "an admission of perjury will not call for a new trial, if, eliminating such evidence, there is still other evidence sufficient to support the judgment. Moreover, where the party could have shown the perjured character of his adversary's testimony at the time of the trial, a new trial has generally been denied, on the ground that there must be an end of litigation." Cases are cited to sustain that view. But we do not think the rule we have stated ought to be so qualified. There is no way for a court to determine that the perjured testimony did not have controlling weight with the jury, and, notwithstanding the perjured testimony was contradicted at the trial, a new light is thrown on it by the admission that it was false; so that, on a new trial, there would be a strong circumstance in favor of the losing party that did not exist, and therefore could not have been shown, at the time of the original trial.

[4] The District Court had lost jurisdiction to entertain a motion for a new trial at the time the so-called confession of perjury was made, and may now exercise its discretion to grant or refuse a new trial only by the consent of this court. We have no doubt that upon a proper showing it would be our duty to authorize the district court to exercise that discretion. Angle v. United States (C. C. A.) 162 F. 264. Has a proper showing been here made? We do not think so. It is true that Parker's testimony was material; for proof that he bought intoxicating liquor from Martin tended strongly to show that Martin was a party to the conspiracy. No other witness connected Martin with an actual sale of liquor, and so Parker's testimony was not merely cumulative. But it does not appear that Parker's affidavit, characterizing his testimony as false, was voluntarily made. That affidavit was obtained under very suspicious circumstances. Parker was not asked to make it at his home, but was induced by a subterfuge to go to a strange city in another state, and there persuaded by a stranger to him, but a friend to Martin, to sign and swear to a statement that had already been prepared, and which he was not allowed to change. It is apparent that advantage was taken of Parker's absence from home, as well as of his youth and inexperience. Kraus does not deny that he advised against telephoning to the district attorney's office. It is not to be denied that he practically coerced Parker to sign the affidavit confessing perjury "just as it was," and without any change or correction. The affidavit obtained under these circumstances is not, as it appears to us, entitled to any weight as tending to show that Parker committed perjury at the trial.

The judgments are affirmed.