Tony Campos MEJIA, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16873.

United States Court of Appeals Ninth Circuit.

June 14, 1961.

subject matter of this appeal seeking a new trial on the ground of newly discovered evidence. The court below denied the motion and the case is here upon appeal from that denial. The order of the court below is appealable under the rule stated in Balestreri v. United States, 9 Cir., 224 F.2d 915.

The evidence at the trial showed that on February 20, 1957, two persons in a 1955 Plymouth automobile delivered approximately 40 pounds of marijuana to one Peter Young. Narcotics officers who were present arrested Young as delivery was attempted but the persons in the automobile escaped. Evidence to connect the appellant with the attempted delivery of marijuana was substantially as follows: The license number of the automobile led to proof that the car was registered in the appellant's name; approximately a week after the crime the car was found across the street from the appellant's residence and impounded by the officers. The two narcotics agents who made the arrest of Young identified appellant as the person driving the car at the time. Approximately a month later, in the presence of an undercover agent, the appellant boasted how he had been the driver of the 1955 Plymouth that made the escape at the time of the original arrest of Young.

Appellant's testimony was that he did purchase the 1955 Plymouth and acquired it in his name but only as a favor for one Lopez who furnished the money and took the car; that he had not seen the car thereafter until after the February 20 crime when it was returned to him. Appellant did not know Lopez well and only met him casually in Mexico 14 years earlier. Young, who received the marijuana, testified that the appellant was not in the car at the time of delivery. Young was tried at the same time with Mejia and was convicted and his conviction subsequently affirmed. Young v. United States, 9 Cir., 286 F.2d 13. Appellant admitted that he had bragged about driving the car which escaped when Young was arrested but testified that he did it boastingly, pretending to be a "big

Gerald M. Doppelt, San Francisco, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Crim. Div., Meyer Newman, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before POPE, HAMLEY and KOELSCH, Circuit Judges.

POPE, Circuit Judge.

The appellant was prosecuted for receiving, concealing and transporting marijuana. He was found guilty by a jury and sentenced to a term of 20 years imprisonment. Upon appeal his conviction was affirmed by this Court. Mejia v. United States, 253 F.2d 560.

Subsequently, on May 22, 1959, appellant filed the motion which is the

shot". Finally, appellant testified that on the morning of February 20, 1957, when the crime was committed, he spent the entire morning at his brother's garage across town and at a considerable distance from the place of the offense. This testimony was uncorroborated.

The principal item of newly discovered evidence which was offered on the application for a new trial was the testimony of one Russell Wootton who testified that he was at the appellant's brother's garage at the same time that appellant claimed he himself was there. He was at the garage while a new cylinder head was being installed on an automobile belonging to a friend of the witness. The witness was able to fix the date definitely by reference to a receipt for the purchase of the cylinder head which had been made on the preceding day. The appellant was present at that time, so the witness testified. In short, the testimony of Wootton, if true, would establish an alibi for the defendant.[1]

The record also showed that previous efforts to locate Wootton before the trial were unsuccessful because appellant had thought that this witness, whose name was Russell Wootton, was named "Russell". The appellant's uncle, who could have identified Wootton, was absent in Mexico and it was not until his return subsequent to the trial that it was learned that Russell was really Russell Wootton.

There is nothing in the record to show that Wootton was not a credible witness. The trial court speaking of it said: "Mr. Wootton's testimony certainly would be sufficient to create a reasonable doubt standing alone." However, the trial judge thought that the motion for a new trial should be denied because of the appellant's own admission in the presence of the undercover agent that he had been driving the car when it escaped. Said the trial judge: "If it were not for the defendant's statement in the presence of Burley, why, I don't think there would be any question that I could very readily grant a motion—well I would grant a motion for a new trial. * * * But in the face of this defendant's own statement, I don't know what you would say to the jury this time."

It is quite apparent that the trial court thought that the evidence of the appellant's statement was so conclusive that it would not be possible for a jury to reach any different result on a second trial.

As previously indicated, appellant testified on the motion for a new trial that he did make the statement that he was driving the car, but he claimed that he did so in an effort to make himself out a "big shot" criminal. There had been news cast of the spectacular escape by the driver of that car. Appellant also testified that he had taken a shot of heroin on the occasion in question.

■ We think it is an elementary proposition of law that a confession of guilt though actually made is not conclusive. Mr. Wigmore in his work on "Principles of Judicial Proof", (2nd ed., § 223) quotes at length from various authorities comments as to the reasons why confessions are sometimes made which are completely false.[2]

1. Upon the motion for new trial which was largely heard upon oral testimony, appellant produced some further testimony which to a degree added to or altered the showing which he had made at his trial. He now testified that because of threats he had been afraid to tell the name of the real purchaser of the automobile, one Castro, who had been a close friend of his and who had been arrested but had escaped to Mexico and was unavailable at the time of the motion. Young, who had previously testified that appellant was not the driver of the car, now testified that there was a striking resemblance between a photograph of Castro and the driver of the Plymouth car. Young identified one Martinez as the man with whom he had dealt for the marijuana and who was the passenger in the 1955 Plymouth. Martinez was produced as a witness but he refused to testify on the ground that he declined to incriminate himself.

2. He quotes from Best "The Principles of the Law of Evidence" as follows: " 'Vanity', observes the jurist above quoted, 'without the aid of any other

It seems to us to be clear that upon a new trial at which the testimony of Wootton would be available, the entire case against the appellant would have a very different aspect from that which confronted him at his first trial. It is true that on such trial a jury might place so much weight upon appellant's admission that it would refuse to accept the testimony of Wootton as raising a reasonable doubt. On the other hand, the jury might in view of Wootton's testimony, accept the appellant's story that he was a mere braggart, and not telling the truth when he asserted he was the driver. We think the trial court was in error in assuming that the admission would be conclusive or determinative.

In this respect the case resembles Griffin v. United States, 87 U.S.App.D.C. 172, 183 F.2d 990, 992. There a defendant convicted of murder notwithstanding his claim of self defense, sought a new trial on newly discovered evidence that the deceased had an open knife in his pocket. There was also evidence that the deceased was holding playing cards in his hand at the time he was killed. The court ordered a new trial reversing the district court and said: "Though the evidence regarding the playing cards in Hunter's hand would, if believed, diminish the significance of the evidence regarding the knife in his pocket, it would not necessarily destroy that significance. Moreover, a jury might believe the knife evidence but not the playing-card evidence."

The Griffin case had previously gone to the Supreme Court on certiorari; the Court remanded the case with directions to consider whether the evidence as to the open knife would be admissible adding: "Were the Court of Appeals to declare that the controverted evidence was admissible according to the law prevailing in the District, it would have to consider further whether it would not be too dogmatic, on the basis of mere speculation, for any court to conclude that the jury would not have attached significance to the evidence favorable to the defendant had the evidence been before it." 336 U.S. 704, 708–709, 69 S.Ct. 814, 816, 93 L.Ed. 993. After remand the Court of Appeals held the evidence admissible and then on the question as to whether the jury having that evidence would have attached significance to it, held that it would be too dogmatic to say that the jury would not have regarded that evidence as sufficient to raise a reasonable doubt. The same court recognized the same principle in Delbridge v. United States, 104 U.S.App.D.C. 399, 262 F.2d 710.

We think that the same principle applies here and that it is too dogmatic to say that the jury could not under the facts of this case regard the Wootton testimony as sufficient to raise a reasonable doubt notwithstanding the admissions made by the appellant.[3]

The order of the district court is reversed and the case is remanded with instructions to grant a new trial.

---

motive has been known (the force of the moral sanction being in these cases divided against itself) to afford an interest strong enough to engage a man to sink himself in the good opinion of one part of mankind, under the notion of raising himself in that of another. * * * ' " (P. 499.)

3. We decide this case upon the special and peculiar facts here before us and find it

unnecessary to state any such broad rule as that expressed by way of dictum in Cleary v. United States, 9 Cir., 163 F.2d 748, 749, as follows: "It is obvious that if the evidence, so claimed to show the alibi, were actually newly discovered, it was a matter for the jury and not for the judge to consider its weight against the testimony of the complaining witness."