**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Toney CHISUM, Jr., Defendant-Appellant.**

**No. 25926.**

United States Court of Appeals,
Ninth Circuit.

Jan. 4, 1971.

R. Richard Fusilier, Hollywood, Cal., for defendant-appellant.

Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Crim. Div., Brian J. O'Neill, Alan H. Friedman, Asst. U. S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING, DUNIWAY and TRASK, Circuit Judges.

DUNIWAY, Circuit Judge:

In 1967, Chisum was convicted on all counts of a ten-count indictment charging violations of 21 U.S.C. § 174 and 26 U.S.C. § 4705(a). He appealed to this court, and we, on January 14, 1970, affirmed the conviction. Chisum v. United States, 9 Cir., 1970, 421 F.2d 207. On March 5, 1970, Chisum filed a motion to vacate under 28 U.S.C. § 2255. He appeals from denial of that motion. We treat the motion as one for a new trial under Rule 33, F.R.Crim.P., on the ground of newly discovered evidence. The motion was made within two years after the mandate of affirmance from this court. See Casias v. United States, 10 Cir., 1964, 337 F.2d 354.

The indictment dealt with three transactions, occurring respectively on May 11, (counts one through four), May 24, (counts five through seven), and May 26, 1966, (counts eight through ten). Counts two and four charge a sale of 55.640 grams of heroin to Chris V. Saiz, a federal narcotic agent, in violation of 21 U.S.C. § 174 and 26 U.S.C. § 4705(a). Count one charges concealment, etc. of .620 grams of heroin in violation of § 174, and count three makes the same charge as to the 55.640 grams of heroin. Counts five and seven charge a sale of 18.070 grams of heroin to Saiz in violation of §§ 174 and 4705(a); count six charges concealment, etc. of the same heroin in violation of § 174. Counts eight and ten charge a sale of 6.965 grams of heroin to Saiz in violation of §§ 174 and 4705(a); count nine charges concealment, etc. of the same heroin in violation of § 174.

An examination of the trial transcript reveals that the convictions rest upon the testimony of Saiz, that without his testimony the convictions could not stand. Briefly, his story was as follows:

On May 11, 1966, pursuant to a telephone call from Chisum to an informant, Saiz and the informant went to Chisum's residence. Chisum showed Saiz a sample of heroin. This is the basis of count one of the indictment. They discussed a sale of heroin to Saiz, and ultimately he purchased 55.640 grams. This is the basis of counts two, three and four.

On May 24, Saiz telephoned Chisum at his residence, and then went to the residence. He followed Chisum to another area, where Chisum said his source of supply was located. Chisum disappeared into an alley, came back, and Saiz then followed him to another location. Chisum made a phone call. Chisum again left, returned, and sold Saiz 18.070 grams of heroin. This is the basis of counts five, six and seven.

On May 26, Saiz telephoned Chisum again, went with another agent to Chisum's residence, and went to the door. Chisum came out and sold Saiz 6.965 grams of heroin. This is the basis of counts eight, nine and ten.

It will be observed that Saiz said that on the first occasion he was accompanied by the informant. The informant did not testify. The court required that his name be disclosed, which was done, but government counsel said that he was

unable to locate him. On the second occasion, Saiz said he was alone. On the third occasion, he was accompanied by Agent Restow. Restow testified and said that he saw Chisum hand Saiz a package. Thus only the May 26 transaction is directly corroborated, and only in part.

There was, however, testimony by surveilling agents. Agent Jackson said that on May 11 he saw Saiz arrive at Chisum's residence and enter it; that Chisum later arrived by car and walked toward the residence, subsequently returned to the car, and drove away. Saiz and the informant came out of the residence; Chisum returned; there was a conversation, and Saiz, Chisum and the informant walked toward the residence. Shortly after, Saiz and the informer came out, got into Saiz' car and drove away. In testifying, Jackson refreshed his recollection from notes made by Agent Downing, who, Jackson said, was with him, but who did not testify. Jackson did the surveillance at Saiz' request.

Agent Celaya said that he conducted surveillance on May 24. He saw Saiz arrive near Chisum's residence and enter it. He saw Saiz return to his vehicle and follow another to a different location. Chisum got out of the lead car and appeared to talk to Saiz. Then Chisum went into an alley, returned, met and conversed with Saiz. Each returned to his vehicle, and the two cars drove part way around a block. Chisum and Saiz went into a bar at the nearest corner. Then Chisum again went toward an apartment complex, returned and met Saiz. Saiz left and Chisum returned to his residence.

At the most, the surveilling agents' testimony gives credibility to Saiz's story by corroborating his testimony about his movements. But their testimony says nothing at all about any dealing in heroin between Saiz and Chisum.

In support of his motion Chisum presented a certified copy of an indictment, filed July 24, 1969, in a case entitled United States v. Mendelsohn, et al, in the United States District Court for the Central District of California, case No. 4337 Criminal. That indictment contains twelve counts. Count One charges that five government narcotic agents, including Saiz and Downing, conspired, beginning on or about May 10, 1966, to corrupt justice in violation of 18 U.S.C. § 1503, to make false statements in violation of 18 U.S.C. § 1001, to commit perjury in violation of 18 U.S.C. § 1621, to suborn perjury, in violation of 18 U. S.C. § 1622, and to wilfully deprive a citizen, one Romero, of his constitutional rights in violation of 18 U.S.C. § 242. The objective was to convict Romero of violating the narcotics laws. Overt acts include: 2. "On or about May 11, 1966," the five agents, including Saiz and Downing, "went to the area of Garvey and Meeker Streets in El Monte, California"; This is quite a different area from that where Chisum resided; 7. On or about May 18, 1966, Arthur J. Mendelsohn and Chris V. Saiz submitted a false form 184 to the Federal Bureau of Narcotics; 12. "On or about October 13, 1966, * * * Chris V. Saiz gave false testimony in the trial of" the case against Romero; 13. The same charge against Downing. Count Five separately charges the making of the false form 184 by Mendelsohn and Saiz on May 18, 1966 as a violation of § 1001. It charges that the form contained false statements as to their surveillance of Agent Downing in El Monte on May 10, 1966. Count Ten charges Saiz with perjury and suborning perjury in violation of §§ 1621 and 1622. It charges that certain testimony of Saiz about his surveillance of Romero and Agent Downing was perjured. Count Eleven makes a similar charge against Downing. Count Twelve charges all five agents with depriving Romero of his civil rights, in violation of § 242.

The § 2255 motion of Chisum does not show what disposition was made of the case of United States v. Mendelsohn et al. We have obtained from the Clerk of the District Court copies of the judgments in the case. These show that all

five defendants, including Saiz and Downing, pleaded guilty to count twelve, and the other counts against them were dismissed. Saiz and Downing pleaded and were sentenced to serve one year, suspended and probation granted on November 24, 1969. We do not consider the dismissal of the other counts, obviously part of a plea bargain, as rehabilitating the veracity of Saiz or Downing for the purposes of Chisum's case.

In our opinion, this case is not governed by the ordinary rules governing motions for a new trial. Rather, it falls within the principles announced in Mesarosh v. United States, 1956, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1. There, the defendants had been convicted of violating the Smith Act. When the case reached the Supreme Court, the government represented to the Court that one Mazzei, a principal government witness, had given false testimony in other Smith Act cases, which raised a doubt as to his veracity in the Mesarosh case. The government said that it believed that Mazzei's testimony in the Mesarosh case "was entirely truthful and credible," and suggested that the case be remanded to the District Court for it to pass upon Mazzei's veracity at the Mesarosh trial. The Court, however, declined to accept the suggestion, pointing out that it was the jury, not the trial judge, which passed upon Mazzei's credibility. Instead, the Court, speaking through Chief Justice Warren, said:

\* \* \* "The dignity of the United States Government will not permit the conviction of any person on tainted testimony. This conviction is tainted, and there can be no other just result than to accord petitioners a new trial.

"It must be remembered that we are not dealing here with a motion for a new trial initiated by the defense, under Rule 33 of the Federal Rules of Criminal Procedure, [18 U.S.C.A.] presenting untruthful statements by a Government witness subsequent to the trial as newly discovered evidence affecting his credibility at the trial. Such an allegation by the defense or-

dinarily will not support a motion for a new trial, because new evidence which is 'merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial.

"Here we have an entirely different situation. The witness Mazzei was a paid informer of the Government—he had been in its employ from 1942 to 1953 for the purpose of infiltrating the Communist Party and reporting the facts found. He testified in this case in that capacity, as a Government witness. It is the Government which now questions the credibility of its own witness because in other proceedings in the same field of activity he gave certain testimony—some parts of it positively established as untrue and other parts of it believed by the Solicitor General to be untrue. (Pp. 9–10, 77 S.Ct. pp. 5–6.)

\*   \*   \*   \*   \*   \*

"Mazzei, by his testimony, has poisoned the water in this reservoir, and the reservoir cannot be cleansed without first draining it of all impurity. This is a federal criminal case, and this Court has supervisory jurisdiction over the proceedings of the federal courts. If it has any duty to perform in this regard, it is to see that the waters of justice are not polluted. Pollution having taken place here, the condition should be remedied at the earliest opportunity.

\*   \*   \*   \*   \*   \*

"The government of a strong and free nation does not need convictions based upon such testimony. It cannot afford to abide with them. The interests of justice call for a reversal of the judgments below with direction to grant the petitioners a new trial." (P. 14, 77 S.Ct. p. 8.) (Footnotes omitted.)

This case differs from Mesarosh in one respect. There, as the Chief Justice emphasized, it was the government which brought Mazzei's perjury to the Court's attention. In our case, it is the defend-

ant who has done so. But what is before us is not the usual case in which a defendant asserts that a witness has perjured himself. Here, it is the government itself that brought the charge against Saiz and Downing. And the charge concerns another narcotics case that was being investigated by the same agents at the same time that they were investigating Chisum. Saiz testified against Romero in October, 1966. He testified against Chisum in September, 1967. But the subject matter of his testimony in both cases related to contemporaneous and somewhat similar events.

We hold that Chisum's conviction is as much tainted as was the conviction in *Mesarosh.*

The order is reversed and the matter is remanded with directions to vacate the judgment of conviction and grant Chisum a new trial.