**Clarence WILLIAMS, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 73–1836.

United States Court of Appeals, Ninth Circuit.

June 21, 1974.

---

Clarence Williams in pro. per.

William C. Smitherman, U. S. Atty., James P. Loss, Asst. U. S. Atty., Phoenix, Ariz., for respondent-appellee.

Before DUNIWAY and ELY, Circuit Judges, and CRARY,* District Judge.

## OPINION

DUNIWAY, Circuit Judge:

In March of 1969, Williams was convicted under two separate counts of selling and facilitating the sale of heroin in violation of 21 U.S.C. § 174. The conviction was affirmed by us on March 24, 1970, United States v. Williams, 9 Cir., 1970, 423 F.2d 696. On February 14, 1973, Williams challenged his conviction by a petition filed under 28 U.S.C. § 2255 which the district court denied without a hearing. Williams appeals and we reverse.

Proceeding pro se, Williams raises a number of claims of error, all of which pertain to the government's use at his trial of the testimony of narcotics agent Henry J. Watson. Williams points out that after his conviction, in November of 1969, Watson pleaded guilty along with a number of other narcotics agents to count twelve of a twelve count indictment charging (among other things) perjury, and conspiracy to deprive one Romero of his civil rights. United States v. Mendelsohn, C.D.Cal., 1969, Crim. #4337. See United States v. Chisum, 9 Cir., 1971, 436 F.2d 645, 647–648. Watson's guilty plea in *Mendelsohn* raises serious questions about the degree to which Williams' conviction is tainted by the use of Watson's testimony.

In Mesarosh v. United States, 1956, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 the Supreme Court reversed convictions because they were tainted by the testimony of a paid informer of the government who was later accused by the government of perjury in other cases. In United States v. Chisum, *supra,* this court applied the *Mesarosh* principle to a case in which another of the defendants in *Mendelsohn* had testified. We held there that the revelation subsequent to Chisum's trial of Agent Saiz's illegal behavior tainted Chisum's conviction, and we reversed the conviction for a new trial. See also United States v. Miramon, 9 Cir., 1971, 443 F.2d 361; United States v. Davis, 10 Cir., 1971, 442 F.2d 72, 74. Once again we are faced with a case in which, as in *Chisum, Miramon* and *Davis,* one of the defendants in *Mendelsohn* testified. It is therefore necessary for us to consider carefully the role that Watson's testimony played at Williams' trial.

Williams' indictment and trial resulted from two separate but almost identical sets of circumstances occurring on February 24–25, 1967 and March 9, 1967. The government presented four witness-

* The Honorable E. Avery Crary, United States District Judge for the Central District of California, sitting by designation.

es to support its case and the defense rested without presenting any evidence.

The government's chief witness was undercover narcotics agent Jackson who testified that he had made the original contact with Williams by calling him in Phoenix by telephone from Los Angeles. Jackson said that he met with Williams and arranged the details of the purchase of one ounce of heroin. A number of hours later Williams' co-defendant, Nero, came to Jackson's motel room and the money and heroin were exchanged in conformity with the Williams-Jackson deal.

Jackson also told the jury the details of the second purchase (this time of two ounces of heroin) which similarly involved a preliminary meeting with Williams to set up the deal and a later visit by Nero to consummate the transaction. Jackson positively identified Williams as the man with whom he had arranged the heroin purchases. Through Jackson the government introduced in evidence the heroin that was purchased on both occasions.

Agent Watson was the government's third witness.[1] He testified that he picked Jackson up at the Phoenix airport on February 24 and again on March 9 and took Jackson to his motel just before both sales. Watson testified that on both occasions he maintained surveillance of Jackson's motel room and that he saw Williams enter and leave the room on the first occasion and pick Jackson up on the second. He positively identified Williams as the man he saw. Watson also testified that he saw Williams and Nero together after both of the Williams-Jackson meetings but just before Nero completed the sales to Jackson.

Watson's testimony thus served to corroborate Jackson's testimony in important respects. It placed Williams and Nero at the motels at the times that Jackson had testified that he had met with the defendants.

The government's fourth witness was Phoenix police officer Young. His testimony only related to the second purchase and only revealed that Young had followed Williams to a place near Jackson's motel on March 9 where he saw Williams meet Nero. Young positively identified Nero and Williams and he placed them together just after Nero had sold the heroin to Jackson.

Because the defendants presented no evidence, their chief defense tactic was to try to impeach the identification of Nero as Williams' partner and generally to impeach the testimony of Young and Watson. After the first purchase, agents Jackson and Watson had identified Williams' partner as being one Levi Haymes. Both defense attorneys extensively cross-examined all three police officers concerning this misidentification. The chief evidence used to impeach Watson and Young was a discrepancy between the testimony of Young and Watson's written report. This discrepancy involved the details of Williams' rendezvous with Nero after the second sale.

In evaluating the significance of Watson's testimony, we are guided by the standards established by the Supreme Court in Mesarosh v. United States, *supra*. In *Mesarosh* the Court reversed with directions to grant a new trial because it determined that the allegedly perjured testimony was so material that it could not "be determined conclusively by any court that [the] testimony was insignificant in the general case against the defendants." 352 U.S. at 10–11, 77 S.Ct. at 6. That observation is equally applicable here. Watson was an important witness in the government's case against Williams. He provided the only corroboration of Jackson's testimony that Williams was involved in the first transaction. Without his testimony the jury might not have been convinced that there was enough evidence to find Williams guilty beyond a reasonable doubt. "Only the jury can determine what it

---

1. The government's second witness was a telephone company employee who testified briefly concerning some telephone company records.

would do on a different body of evidence, and the jury can no longer act in this case." Mesarosh v. United States, *supra*, 352 U.S. at 12, 77 S.Ct. at 7.

A conviction based substantially upon tainted evidence cannot stand. Mesarosh v. United States, *supra*, 352 U.S. at 14, 77 S.Ct. 1. Watson was the government's agent. He was charged by the government with perjury and convicted of an act perpetrated in an investigation similar in nature and contemporaneous in time to the investigation of Williams. The government itself prosecuted Watson and thereby impugned his integrity and credibility. Williams is entitled to a new trial. United States v. Davis, 10 Cir., 1973, 473 F.2d 1023, 1025.

The order appealed from is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.