351 So.2d 332 (1977)
Mrs. Stanley (Joyce) GOLDBERG, Stanley Goldberg, Edward T. Graham, and Edward T. Stephenson, Appellants,
v.
STATE of Florida, Appellee.
Nos. 49032-49035.
Supreme Court of Florida.
July 1, 1977.
Rehearing Denied November 21, 1977.
Eugene C. Heiman and Judith H. Hayes of Heiman & Heiman, Miami, for Mrs. Stanley (Joyce) Goldberg.
Richard B. Marx and Richard N. Krinzman, Miami, for Stanley Goldberg.
Louis M. Jepeway, Jr., of Jepeway, Gassen & Jepeway, Miami, for Edward T. Graham.
Mallory H. Horton of Horton, Perse & Ginsberg, Miami, for Edward T. Stephenson.
Robert L. Shevin, Atty. Gen., and Linda Collins Hertz, Asst. Atty. Gen., for appellee.
ADKINS, Justice.
This is an appeal from the Circuit Court of Dade County. The trial court directly passed upon the constitutionality of Section 838.06, Florida Statutes (1973). We have jurisdiction. Article V, Section 3(b)(1), Florida Constitution.
Appellants, three Commissioners of Dade County and the husband of one of the Commissioners, were indicted by a grand jury on charges of conspiring to accept and accepting unauthorized compensation in exchange for favorable consideration of certain zoning proposals. Following trial, the jury found each appellant guilty on each count.
The conspiracy count reads in pertinent part as follows:

*333 "[B]eginning on the 1st day of March, 1973 and continuing until the 30th day of November, 1974 ... Joyce . . Stephenson ... Graham and Stanley ... did conspire ... with Rothstein or ... MacLean, or both, to commit a series of felonies, to wit: The offering or payment of money as bribes or unauthorized compensation by ... Rothstein or ... MacLean, or both, to ... Joyce ... Stephenson and... Graham in their capacity as ... County Commissioners ... in violation of Sections 838.011 and 838.071, Florida Statutes, and the corrupt solicitation or acceptance of money as bribes or unauthorized compensation by ... Joyce ... Stephenson ... and Graham in their capacity as . .. County Commissioners ... in violation of Sections 838.012 and 838.06, Florida Statutes, and in furtherance of said conspiracy ... Joyce . . Stephenson ... and Graham did corruptly solicit or accept money or other valuable thing from ... Rothstein ... or ... MacLean, or both, to obtain the affirmative votes of . . Joyce ... Stephenson and . . Graham or as unauthorized compensation for the affirmative votes of ... Joyce ... Stephenson and . . Graham in their public capacity as County Commissioners ... on various zoning matters brought or to be brought before the ... County Commissioners ... by ... Rothstein during the aforesaid time period, such conspiracy being in violation of Section 833.04... ."
We hold that the conspiracy indictment was insufficient to inform appellants of the charges against them, and therefore reverse the trial court's denial of appellants' motion to dismiss as to Count I.
The shot-gun approach of a conspiracy charge could amount to a prosecution for general criminality resulting in a finding of guilt by association. The courts should, at all times, guard against this possibility so that the constitutional rights of an individual are not curbed or clouded by the web of circumstances involved in a conspiracy charge. This type of charge is not looked upon with favor by some legal scholars.
The following appears in the Unnecessary Crime of Conspiracy by Phillip E. Johnson, 61 Cal.L.Rev. 1137 (Sept. 1973):
"The advantages which conspiracy provides the prosecution are seen as disadvantages for the defendant so serious that they may lead to unfair punishment unfairly determined. Critics taking this approach typically propose to trim conspiracy doctrine just enough to provide protection for defense interests without disturbing those rules deemed genuinely important for effective law enforcement." ... At 1137.
"The central fault of conspiracy law and the reason why any limited reform is bound to be inadequate can be briefly stated. What conspiracy adds to the law is simply confusion, and the confusion is inherent in the nature of the doctrine. The confusion stems from the fact that conspiracy is not only a substantive inchoate crime in itself, but the touchstone for invoking several independent procedural and substantive doctrines. We ask whether a defendant agreed with another person to commit a crime initially for the purpose of determining whether he may be convicted of the offense of conspiracy even when the crime itself has not yet been committed. If the answer to that question is in the affirmative, however, we find that we have also answered a number of other questions that would otherwise have to be considered independently. Where there is evidence of conspiracy, the defendant may be tried jointly with his criminal partners and possibly with many other persons whom he has never met or seen, the joint trial may be held in a place he may never have visited, and hearsay statements of other alleged members of the conspiracy may be used to prove his guilt. Furthermore, a defendant who is found guilty of conspiracy *334 is subject to enhanced punishment and may also be found guilty of any crime committed in furtherance of the conspiracy, whether or not he knew about the crime or aided in its commission.
"Each of these issues involves a separate substantive or procedural area of the criminal law of considerable importance and complexity. The essential vice of conspiracy is that it inevitably distracts the courts from the policy questions or balancing of interests that ought to govern the decision of specific legal issues and leads them instead to decide those issues by reference to the conceptual framework of conspiracy. Instead of asking whether public policy or the interests of the parties requires a particular holding, the courts are led instead to consider whether the theory of conspiracy is broad enough to permit it. What is wrong with conspiracy, in other words, is much more basic than the overbreadth of a few rules. The problem is not with particular results, but with the use of a single abstract concept to decide numerous questions that deserve separate consideration in light of the various interests and policies they involve." At 1139-40.
Also, in Conspiraacy  The Prosecutor's Darling by Solomon A. Klein, 24 Brooklyn L.Rev. 1 (Dec. 1957), the following appears:
"[C]onspiracy has become an `elastic, sprawling and pervasive offense . . so vague that it almost defies definition', and, `chameleon-like, takes on a special coloration from each of the many independent offenses on which it may be overlaid.' Because of its wide reach and complexity, it is more difficult to confine within definitive limits than any other type of crime. The statutory `definitions' are really no definitions at all; they merely describe broad categories of anti-social objections which make a `conspiracy' punishable. The best that the courts have been able to say is that: `The gist of the crime of conspiracy consists in a corrupt agreement between two or more individuals to do an unlawful act, unlawful either as a means or as an end.'" At 3.
More than fifty years ago the conference of senior circuit judges, presided over by Chief Justice Taft, condemned the prevalent use of conspiracy charges brought "for the purpose  or at least with the effect  of bringing in much improper evidence," and emphasized that "the rules of evidence in conspiracy cases make them most difficult to try without prejudice to an innocent defendant." Report of the Attorney General of the United States for 1925, at 5-6.
We recognize that the charge of conspiracy is an excellent tool in combating organized crime, but the use of this charge has been expanded to dragnet proportions in some instances. Of course, the law of criminal attempt is sufficient to protect society against the danger of incipient wrongdoers. Also, if several join in the commission of a criminal act, the prosecutor could rely on the basic rule that one who counsels, commands, induces, procures or aids and abets another in committing a crime is punishable as a principal defendant. These alternatives are available and could be used in lieu of a conspiracy charge.
Although the conspiracy doctrine has been referred to as "the darling of the modern prosecutor's nursery," (Harrison v. United States, 7 F.2d 259, 263 (2d Cir.1925)), it is the duty and responsibility of the judiciary to eliminate, or at least to minimize the dangers of abuse.
The indictment involved in the present case is clearly deficient under the criteria set forth by this Court in State v. Smith, 240 So.2d 807 (Fla. 1970):
"An indictment or information for conspiracy must contain a statement of the facts relied on as constituting the offense in ordinary and concise language, with as much certainty as the nature of the case will admit, in such a manner as to enable a person of common understanding to know what is intended, and with such precision that the accused may plead his acquittal or conviction to a separate indictment *335 or information based on the same facts." At 809.
Some of the more patent flaws found in the present indictment are as follows:
(1) It is impossible to tell whether it charges that all four appellants jointly conspired with "Rothstein ... or MacLean, or both," or whether there were two conspiracies, one between some of the appellants and Rothstein, and the other between the remaining appellants and MacLean;
(2) It is impossible to tell whether the "offering or payment" of "bribes or unauthorized compensation" was made by Rothstein, or MacLean, or both;
(3) It is impossible to tell whether appellants are accused of "soliciting or accepting bribes or unauthorized compensation" jointly or severally; and
(4) Appellant Stanley Goldberg is named as one of the conspirators, yet he is named neither as a payor nor a payee of unauthorized compensation to a public official. His role in the alleged conspiracy can only be a matter for speculation. In sum, this indictment defies elucidation by even the most Byzantine mind.
The prejudice to appellants resulting from the defective conspiracy count is itself sufficient to mandate a new trial on the remaining charges. However, the record before us is replete with errors, several of which individually and all of which cumulatively would warrant reversal. We feel compelled to discuss perhaps the most egregious.
While this case was pending and during the trial, a similar case was pending against Harry Harris, a Commissioner of Monroe County, Circuit Court Case No. 75-5473, State v. Harry Harris. In both Harris and the instant case, George MacLean was named as a co-conspirator but not prosecuted. The State granted immunity to MacLean to procure his testimony in both of these prosecutions. His testimony was to be essentially the same in both cases  that he gave money to the defendants in each case as a bribe to influence matters before the respective County Commissions. Subsequently, the Harris prosecutor (who also prosecuted the present case) requested that MacLean be called as a court's witness since the results of a polygraph examination indicated that he was testifying falsely, thereby prejudicing the State, and, in at least one area serving his own interest to the detriment of the defendant. The trial court refused the request. The Third District Court denied certiorari. State v. Harris, 320 So.2d 57 (Fla. 3d DCA 1975). The State then dismissed the information against Harris.
In the instant case, the State again moved that MacLean be declared a court's witness, and again the request was denied. Prior to trial, defense counsel requested the State to disclose "every crime ... for which George MacLean had been given immunity," "all of the terms of the immunity granted to George MacLean," and "copies of statements of the State's witnesses who have been given immunity, which statements contain inconsistencies ... with reference to the matter charged in the indictment herein." Notwithstanding these requests, the State never disclosed the Harris case.
The failure of the trial judge to grant appellants' motion for a new trial under these circumstances runs squarely afoul of Mesarosh v. United States, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956). In Mesarosh, while review of the defendant's conviction was pending before the United States Supreme Court, the Solicitor General informed the Court that he had just received information indicating that one of the Government's witnesses at trial had testified falsely in similar proceedings. While the Government believed that the witness' testimony at trial was "entirely truthful and credible," it suggested a remand to the district court for a determination thereof. 352 U.S. at 4, 77 S.Ct. 1. The Supreme Court reversed the conviction and ordered a new trial. The Mesarosh rule has subsequently *336 been applied to situations in which the defense, rather than the prosecution, brings to light the unreliability of a prosecutorial witness' testimony in another proceeding in the same field of activity. United States v. Chisum, 436 F.2d 645 (9th Cir.1971).
MacLean's testimony in both cases involved alleged payoffs to County Commissioners in order to procure favorable treatment on zoning matters. This is clearly a "similar field of activity." Thus, appellants' convictions are as tainted as those in Mesarosh and Chisum, and a new trial is required in accordance with those decisions.
In addition, the State's knowing failure to disclose details of MacLean's testimony in the Harris case violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Such details were essential to preparing a defense in a case of this nature, where witness credibility was virtually determinative of the entire issue.
Since there are other grounds to support our decision, we fail to reach the constitutional questions raised by appellants. This case is reversed and remanded, with directions to the trial court to dismiss Count I of the indictment, and grant a new trial on the remaining charges.
It is so ordered.
OVERTON, C.J., and BOYD, SUNDBERG, HATCHETT and KARL, JJ., concur.
ENGLAND, J., dissents.