PER CURIAM.
Seymour Weinstein appeals an adverse judgment on his counterclaim for rescission of a land sales contract and damages for alleged fraudulent sale of land sold to him by Sam B. Nevel.
In February, 1973 plaintiff-counterdefen-dant, Sam B. Nevel, purchased 14 acres of undeveloped, unzoned property. Nevel retained attorney Alan Rothstein to represent him in applying for RU-2 zoning (duplex) on the subject property. The Dade County Commission approved the application and granted the desired zoning. Thereafter, on December 10 defendant-counterplaintiff, Seymour Weinstein, entered into an option contract for the purchase of the property and closed on the property in November, 1974. He executed a purchase money second mortgage in favor of Nevel which was subordinate to three equal prior first mortgages. Subsequently, a scandal arose wherein three County Commissioners were accused of accepting illegal payments made by attorney Alan Rothstein in order to secure for his clients desired zoning classifications on their properties. The RU-2 zoning on Weinstein’s property was suspected of being secured in this illegal manner by Rothstein and the County Commission imposed a building moratorium on the property on November 4, 1975. Eventually the Commission rolled back the zoning to RU — 1 (single family) in April, 1976. After the removal of the RU — 2 zoning, Weinstein sent Nevel a letter stating that he was tendering the property back to Nevel and demanded return of payments expended in reliance on the zoning with respect to the project and purchase of the property. Nev-el refused and Weinstein discontinued all mortgage payments. Nevel instituted the instant mortgage foreclosure action against Weinstein. (However, the foreclosure action subsequently became moot due to a separate foreclosure action on the first mortgages). Weinstein counterclaimed for damages for breach of contract, fraud and misrepresentation and for rescission. The basis for the counterclaim was that Roth-stein secured the RU-2 zoning through illegal payments to three County Commissioners and that as attorney and agent of Nev-el, Rothstein’s illegal actions should be imputed to Nevel. Under this premise, Wein-stein contends that the sale of the property by Nevel without mention of the alleged illegally secured RU-2 zoning constituted a fraud upon him since three County Commis *161 sioners were indicted and convicted[1] for allegedly accepting or soliciting bribes for the zoning of the subject property which, in turn, eventually resulted in the zoning rollback to RU-1. Weinstein also argued that because the RU-2 zoning was .removed by the County Commission, the Nevel mortgage was neither valid nor supported by consideration inasmuch as the property was to have a valid RU-2 zoning. Nevel’s foreclosure action having been rendered moot, the cause proceeded to a non-jury trial on Weinstein’s counterclaim. The trial judge entered judgment for counterdefendant Nevel on Weinstein’s counterclaim based upon the following findings:
sfe sj« sfs sfc % *
“No evidence was offered which could sustain a finding that NEVEL had actual knowledge of any impropriety or illegality in Rothstein’s efforts to secure RU-2 zoning to the property in question. Nor was sufficient evidence offered which showed by the ‘greater weight of the evidence’ that the RU-2 zoning was improperly or illegally secured; the non-disclosure of which would have constituted fraud.
♦ * * Sfc ♦ #
“. . . this Court allowed WEIN-STEIN greater latitude in proving it’s case, and above NEVEL’s vigorous objections and argument, permitted WEIN-STEIN to introduce into evidence the testimony of Rothstein offered in the criminal trial against the three County Commissioners (Goldberg v. State of Florida). Still, this testimony did not prove that the RU-2 zoning of the property was secured illegally, although it could support an inference, among other equally plausible inferences non-supportive of WEINSTEIN’s case, that the RU-2 zoning might have been secured by a promise of future payment.
“This lone inference, countered by facts in evidence tending to prove that the RU-2 zoning of the property was properly secured and that if any impropriety took place with regard to the zoning of this property it took place after such zoning was effective, and after Rothstein had ceased to be an ‘agent’ for NEVEL, is further troubled by the evidence from which it arises. The Supreme Court of Florida recently reviewed the record of the criminal trial from which Rothstein’s testimony and this one inference arose. Goldberg v. State of Florida, 351 So.2d 331 [332] (1977). Upon reviewing the record, the Court found it to be replete with errors and reversed, quashing the convictions of the three County Commissioners and dismissing the indictments.
♦ s(! j|e s|e ajc
“The greater weight of the evidence, both factual and inferential, suggests the RU — 2 zoning classification was properly secured and free from illegality, the knowledge or participation in which could be imputed to NEVEL.
“Nor did the evidence support a finding of constructive knowledge on the part of NEVEL. There was and still is every reason to believe the RU-2 zoning on the property at the time of the option agreement and at the time of the purchase and sale of the property by the parties, was a proper zoning classification. Photographs and descriptions of the development in and about the property in question as well as the testimony of WEIN-STEIN (himself an experienced developer) all strongly support the proposition that the RU-2 zoning classification was a proper one. Thus, in the absence of any facts or circumstances which could have shown NEVEL to have had reason to know of any impropriety in the securing of the RU-2 zoning, this Court finds NEVEL to have had no constructive knowledge of any impropriety involved in the RU-2, which if non-disclosed to WEINSTEIN would have constituted fraud.
*162 “Nor does this Court find NEVEL to have entered into the option agreement or sale contract with WEINSTEIN with any intent to defraud, deceive, or otherwise misrepresent any material fact. The evidence has shown NEVEL, as well as WEINSTEIN, to have entered into and concluded the arms length transaction between them in good faith.
“For these reasons, this Court finds WEINSTEIN to have failed to sustain his burden of proof necessary to reach a finding of fraud on the part of NEVEL. WEINSTEIN thus cannot be awarded damages on that ground.
“Furthermore, this Court cannot rescind the land sale contract, or award damages in addition thereto, as argued for by WEINSTEIN. In view of the evidence of this case, WEINSTEIN may not receive such equitable relief from this Court.
“ ‘One who seeks equity must do equity.’ WEINSTEIN, through his own deliberate actions and inactions, is unable to ‘do equity.’ and return to NEVEL that which he gained from him in the land sale contract. Nor can this Court place NEV-EL in a position equal to that which he was in with regard to the property involved in the contract prior to the contract, WEINSTEIN no longer is in possession of the contract property; he relinquished it to his first mortgagor in lieu of making continued mortgage payments. In so doing, he additionally caused the subsequent ‘wiping out’ of NEVEL’s subordinate purchase money mortgage upon the property by the foreclosure of the first mortgage.
“That NEVEL was able to re-purchase the property at this foreclosure sale, is of little consequence; the property is no longer the ‘same’ property which he sold to WEINSTEIN. The property sold by NEVEL to WEINSTEIN was zoned RU-2, while the property re-purchased by NEVEL is zoned RU-1. Neither WEIN-STEIN, nor this Court, is capable of returning the parties herein, to a position equal to that which existed prior to the conclusion of the land sale contract now sought to be recinded.
“Nor does this Court find NEVEL to be the ‘less innocent, party, as argued by WEINSTEIN. The record is replete with evidence of how WEINSTEIN, an experienced land developer, could have protected the RU-2 zoning of the subject property and thus have avoided all of the damages which he now asserts.
* * sfs * * *
“In addition, there is WEINSTEIN’s reluctance and failure to retain counsel to represent his interest and protect the RU — 2 zoning classification at the County’s reconsideration hearing there was testimony to the effect that the County Commissioners’ decision to ‘roll-back’ the zoning on this property was made totally without regard to any alleged bribery in the original RU — 2 zoning. In view of these facts, WEIN-STEIN’s failure to retain counsel to represent his interests as owner of the subject property before the County Commissioners acting as a ‘zoning appeals board’, in view of the potential damages such a change in zoning could have caused and which WEINSTEIN is in fact claiming were caused, damages WEINSTEIN’s claim that NEVEL is at least the ‘less innocent’ party.
“In addition to this, there is also WEINSTEIN’s failure to challenge or seek to enjoin, this highly questionable ‘roll-back’ in the Courts of this State.
“Lastly, and interrelated with the above, WEINSTEIN’s delay in seeking this Court’s aid in the recission of the land sale contract until after the alleged fraud, misrepresentation, or mistake was allowed to cause as much damage as it possible could and in fact did, is fatal to his cause in equity. For this Court to have been able to recind this land sale contract, WEINSTEIN must have asserted his right to recind and seek the aid of the Courts within a reasonable time after he had knowledge or reason to know of the alleged fraud, misrepresentation, or mistake. The evidence shows WEIN- *163 STEIN had actual knowledge of the alleged fraud upon which he now asserts his right to recission, at the inception of the moratorium declared by the County upon the property in question, and at the least had reason to know of any such alleged fraud several months prior to that. WEINSTEIN’s delay, in view of the consequences, which from the evidence were clearly a potentiallity apparent to him at that time, was unreasonable and constitute a waiver of his right to reeind.”
* * * * * *
Weinstein appeals the denial of the relief sought in this counterclaim.
After a review of the questions raised in this appeal, we find the dispositive issue is whether the findings of the trial judge (sitting as the trier of the facts) are supported by substantial competent evidence. There being more than an adequate amount of such evidence, this court will not disturb the findings of the trial judge. See Equitable Life Assurance Society of United States v. Boraks, 276 So.2d 246 (Fla. 3d DCA 1973).
Judgment affirmed.

. These convictions were overturned by the Supreme Court. Goldberg v. State, 351 So.2d 332 (Fla.1977).