GLICKSTEIN, Judge.
The state appeals the discharge of appellant for violation of the speedy trial rule. We reverse and remand.
CHRONOLOGY OF EVENTS
September 29, 1983 Raymond Hutley arrested and charged with carrying a concealed firearm.
January 9, 1984 Hutley arraigned on an amended information changing the charge to possession of a firearm by a convicted felon. Hutley entered not guilty plea, requested jury trial, and requested a continuance to investigate new elements of the amended charge.
January 10, 1984 State submitted a supplemental witness list naming a previously unnamed witness.
March 14, 1984 Case called up for trial. State sought and obtained order to take fingerprints. The state nolle prossed because unable to go forward.
March 20, 1984 Hutley arraigned on the same charge, based on the same inci *234 dent, filed under a new ease number. State pointed out speedy trial was at issue and requested trial to begin March 23. Defense agreed. Prosecutor says he informed defense of document he intended to use for identification with case number.
March 27, 1984 Prosecutor informed defense counsel by phone he had previously undisclosed documents he intended to use at trial. Case called for jury selection before then County Judge Lupo, as accommodation. Defense counsel told Judge Lupo he had filed motion for sanctions for discovery violation and wanted it heard before jury selection began. Judge Lupo refused to rule on the motion, preferring to leave the matter to Circuit Judge Mounts. Jury selected and sworn. Other things being equal, March 27 was the last possible day for this trial to begin under the speedy trial rule.
March 28, 1984 Defense raised its motion for sanctions before Judge Mounts. Court declared a mistrial and granted Hutley a continuance to examine the newly produced documents disclosed by the state.
April 13, 1984 Defense filed motion for discharge for expiration of the speedy trial period.
May 11, 1984 Judge Mounts granted the motion for discharge.
According to the state, Hutley had several felony convictions. The state’s problem was to locate a fingerprint record clear enough to assure identification of Hutley as the same person. Hard copy made from microfilm records usually was too blurred for comparison of fingerprints. The state contended the defense was informed of the state’s intention to amend the charge weeks before the January 9, 1984, arraignment, and knew of the state’s intention to obtain a fingerprinting order at the March 14 proceeding long before that date, and could have avoided compelling the state to nol-pros the case at that time, only to refile. The state contended further that it had told the defense in advance of March 27, 1984, on which felony conviction the state intended to rely to prove Hutley was a convicted felon, and had stated the case number of that conviction. Thus, the state maintained, there was no actual prejudice to the defendant.
In its order granting defendant’s motion for discharge, the trial court held that the defense motion for a continuance on January 9, 1984, in order to investigate the new elements of the amended charge, did not operate as a waiver of speedy trial. The court reasoned, as the basis for granting the discharge motion, that material discovery was furnished too late for the defendant to make use of it in preparing his defense, and referred to State v. Del Gaudio, 445 So.2d 605 (Fla. 3d DCA 1984), and eases cited therein, as authorities. The court said the state should not be allowed to benefit from the fact the jury had been selected within the speedy trial period, as the trial had been set for that date as an accommodation to the state, because the defense had been led to believe no discovery remained, and because the jury selection had proceeded only because Judge Lupo would not take responsibility for hearing the sanctions motion.
The issue is whether the trial court erred in granting defendant/appellee’s motion to discharge, on the ground the speedy trial rule had been violated, inasmuch as defendant/appellee waived his speedy trial rights when he obtained a continuance at the time he was arraigned on the amended information. We conclude it did.
The state contends that because the defense was on notice the charge would be changed to possession of a firearm by a felon, well in advance of the January 9, 1984, arraignment, the defense’s successful motion for a continuance on that date, purportedly to investigate the new elements of the amended charge, constituted a waiver of defendant’s speedy trial rights. Rule 3.191(d)(3), Florida Rules of Criminal Procedure, states that a discharge motion shall be granted if trial is not commenced within the period of the speedy trial rule unless there has been an extension, still in effect, *235 of that period on the court’s own motion or the motion of either party in the exceptional circumstances of Rule 3.191(f) (none of which are applicable here); or the delay is attributable to the defendant. In the latter instance, if the delay is not excused, the pending motion for discharge is voidable on the motion of the state, but trial must be scheduled within ninety days of the denial order.
The key question is thus whether the continuance of January 9 was attributable to the defense and not excused. The trial court said that continuance was not a waiver of the speedy trial period, citing the three cases we now summarize.
State v. Martins, 391 So.2d 781 (Fla. 4th DCA 1980), is unhelpful because it is a brief per curiam affirmance citing the authority of the two other cases. In Mulryan v. Judge, Division “C” Circuit Court of Okaloosa County, 350 So.2d 784 (Fla. 1st DCA 1977), the information against the defendant was changed, 168 days after his arrest and three days before trial was to commence, from possession of stolen property to burglary and grand larceny. The appellate court said the continuance granted the defendant at that juncture was not attributable to him and he was not responsible for the delay. In State ex rel. Wright v. Yawn, 320 So.2d 880 (Fla. 1st DCA 1975), a defense continuance likewise was not charged against the defendant when no indictment or information was returned for 142 days from the defendant’s arrest.
We do not think the circumstances of Mulryan and Yawn are sufficiently similar to those of the present case to justify their use as authority for not attributing the continuance to the defendant. In Mulryan only three days remained to the date set for trial and only twelve days remained of the speedy trial period when a radical change occurred in the information. The material elements of burglary and grand larceny are so patently different from those of possession of stolen property there is no need to point out the differences. Clearly Mulryan was put at a great disadvantage, not having had discovery of the state’s proofs of the new charges or opportunity to assemble defensive evidence, such as alibi witnesses. Somewhat similarly, in Wright, it was not possible to mount a reasonable defense when Wright did not know the precise crime - sexual battery - that he was being charged with until 38 days before the speedy trial period was to run.
We think the true principle of Wright and Mulryan is not simply that a continuance will not be charged to the defendant when charges emerge late in the speedy trial period such that one or more material elements must be faced that theretofore did not have to be planned for. Rather, we think the crucial question is whether the defense is in fact prejudiced by the change in the charge (or the late unveiling thereof).
In the instant case it is contended the defense was on notice of the upcoming amendment to the information well in advance of the formal change. More important than that is the matter of defending against the new material element - a prior felony conviction. How does one do that? What evidence can one adduce to counteract it? What discovery will assist one’s defense?
We have no reason to suppose in the instant case that the prior conviction the state finally chose to use was not actually of the present defendant. If we were dealing with a case of mistaken identity, we could conjecture that there might be a need to examine the record; to obtain an expert witness who would testify the fingerprints of the convicted felon are not those of the present defendant; perhaps to muster proof that at the time of that trial the present defendant was alive and well and living in Palo Alto. But the state says Hutley has had several felony convictions, any one of which would suffice to prove this element of the present charge, but for the problem with getting clear reproduction of fingerprints from the microfilm records of the courts, so that comparison can be made. The defense does not deny that *236 there have been such convictions, but is silent on this subject. If the convictions in fact exist and can be proven, how does one defend against the fact of any or all of them? Moreover, the defendant must know what he has been convicted of, and when and where. What impact is there on an effective defense, first of the late change in the charge - not nearly as late in relation to the running of the speedy trial period as in Mulryan, nor nearly as significant to defense preparation - and later of the tardy discovery by the state of which particular prior felony conviction the state was going to rely on? Defendant’s contention concerning the need to find out whether his civil rights had been restored is discussed later.
While not directly on point, we think State v. Del Gaudio, 445 So.2d 605 (Fla. 3d DCA 1984) is instructive on the present issue. Judge Pearson’s opinion reflects extensive research of relevant state and federal case law. As he points out, the key question when the state has been delinquent in complying with discovery requirements is whether prejudice to the defendant has resulted. We think the same should apply when the issue revolves around a mid-stream change in the charge against a criminal defendant. Judge Pearson recalls also the too frequently forgotten principle that the public’s interest in bringing the accused to trial not be sacrificed in the name of punishing the prosecutor’s misconduct.
In Del Gaudio the defendants had needed two discovery orders to pry loose what was purportedly all the discovery material the state had. Shortly before trial was to begin (that day was the very last of the speedy trial period) the defense agreed to extend the speedy trial time for four months in order to avoid assignment of the case to a different judge. About a month after the time was extended, the state furnished the defense additional and arguably crucial discovery material. At that, the defense moved dismissal for the discovery violation and discharge for violation of the speedy trial requirements. The trial court granted the former and declined to rule on the latter. The appellate court found the late discovery had not prejudiced the defendants’ defense and that therefore sanctions against the state were inappropriate. The trial court was instructed, however, to determine whether the defendants would have agreed to the extension of the speedy trial period, as they did, had they known not all the material they had a right to had been discovered to them. If not, is the implication, discharge under the speedy trial rule might be warranted. A defendant should not be made to choose between his discovery right and his right to a speedy trial. The critical question was whether material discovery was furnished so late as to impair the defendant’s preparation of his defense within the speedy trial period.
In the instant case we apply this concept by analogy to the effect of the change in the charge, and suggest no prejudice occurred to timely preparation of an effective defense because of the timing of the information amendment. (If the issue raised had been whether the state’s belated identification of the conviction record on which it would rely hampered timely preparation of an effective defense, we would also respond in the negative.)
On the surface, the discharge in this case appears to be grounded in case law; however, we think a more intensive analysis requires reversal. The continuance of January 9, 1984, is attributable to the defendant; the effect of this continuance carries across the hiatus created by the nol-pross-ing in March, State v. Condon, 444 So.2d 73 (Fla. 4th DCA 1984); thus the speedy trial period was no longer rigidly the 180 days from arrest stated in the rule, but a reasonable time. Defendant’s discharge was therefore inappropriate, however negligent or inept the assistant state attorney may have been; the speedy trial period had not run.
Defendant contends that the discovery of the state’s reliance on the particular 1975 felony conviction came too late *237 for the defense properly to investigate whether the governor had restored his civil rights as to that conviction. Section 790.-23, Florida Statutes (1983), excepts from liability for weapons possession pursuant to the section, a convicted felon whose civil rights have been restored. Setting aside the likelihood that defendant would know and have documentation of any such rights restoration (and that a prudent defense would have forearmed itself on this question as to all prior felony convictions), we would point out that defendant’s contention would bear upon declaration of the mistrial and the further continuance, both of which occurred, but not on whether the original continuance was attributable to the defendant. The state is not here appealing the mistrial and new continuance, but the discharge of the defendant. Key is the fact that if the original continuance is attributed to the defendant, the mistrial was not declared at the eleventh hour; therefore, there was no basis for discharging the defendant, as the speedy trial rule would not be violated by postponing trial for a further reasonable period. If, indeed, defendant needed to investigate possible restoration of his civil rights, he would have time to do so. There is little likelihood a moderate further delay would begin to impinge on the defendant’s constitutional right to a speedy trial.
In closing we refer again to the Del Gaudio opinion, wherein it is noted that the rule authorizing imposition of sanctions for a discovery violation was never intended as an escape hatch for the defendant from his substantive predicament, and that even when a discovery violation is disclosed after the defendant has been convicted, all he gets is a new trial, not a discharge. 445 So.2d at 608 (citing Richardson v. State, 246 So.2d 771, 774 (Fla.1971); Goldberg v. State, 351 So.2d 332 (Fla.1977), and other cases).
ANSTEAD, C.J., and GOLDMAN, MURRAY, Associate Judge, concur.