**UNITED STATES of America**

**v.**

**Irving H. MEYERS et al. (two cases).**

**Appeal of Joseph DiSTEFANO,**
**in Nos. 72–2069, 72–2071.**
**(two cases).**

**Appeal of Dominick REINA, Jr.,**
**in No. 72–2070.**

**Nos. 72–2069 to 72–2071.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) June 15, 1973 as to Nos. 72–2069 and 72–2071.

Argued June 12, 1973 as to No. 72–2070.

Decided Aug. 31, 1973.

**114**

Arnold D. Levine, Levine, Freedman & Hirsch, Tampa, Fla., for appellant in Nos. 72–2069 and 72–2071.

Henry Gonzalez, Tampa, Fla., for appellant in No. 72–2070.

Robert E. J. Curran, U. S. Atty., Peter M. Shannon, Jr., Crim. Div., Appellate Section, U. S. Dept. of Justice, Washington, D. C., for appellee.

Before GIBBONS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The defendants Reina and DiStefano were indicted and convicted on various charges of mail fraud and conspiracy growing out of the sale of voting machines to Hillsborough County, Florida. The transactions involved bribery of local officials by the Shoup Voting Machine Company of Philadelphia and a loss to the taxpayers of Hillsborough County of about $750,000.

The details of the scheme are not particularly relevant to the issues presented in this appeal, and we will limit our review to the pertinent facts. Since the roles of DiStefano and Reina were quite different and their position on appeal somewhat adverse to each other, their cases will be treated separately.[1]

### The Reina Appeal

Reina is alleged to have participated in the scheme by permitting the use of a post office box to receive two checks, each for $20,000, from the Shoup Company destined for the co-defendant DiStefano. The post office box had been rented and used by the Reina Brothers and Company, Inc., a wholesale grocery company controlled by the defendant.

At the direction of DiStefano, the checks were made out to "Arturo Garcia, P.O. Box 5116, Tampa, Florida." The first check, which was the subject of Counts I and III, was mailed from Philadelphia on December 30, 1969 and delivered to the Reina box in Tampa.

The second check, which is the subject of Count II, was mailed from Philadelphia on March 26, 1970, was received in Nashville, Tennessee[2] by a representative of the Shoup Company, and was hand delivered by him to DiStefano in Tampa.

One Manuel Rodriguez, a teller at the Columbia National Bank in Tampa, testified at the trial that DiStefano and another man, not Reina, presented a check on January 2, 1970 and that it was already endorsed. Rodriguez also testified that on April 1, 1970 the two men again appeared at the Bank, the one being identified by DiStefano as "Arturo Garcia," and again a check was cashed.

The government also produced a handwriting expert who concluded that the endorsements on both checks had been made by the same person and that the signature of "Garcia" was in Reina's handwriting.

1. Reina and DiStefano were indicted, along with others, at No. 71–750. DiStefano was also included, although Reina was not, among those indicted at No. 71–460 which involved events on earlier dates than those at No. 71–750.

2. Count IV which alleged receipt of the check at the Reina box in Tampa was dismissed by the trial judge at the conclusion of the government's case.

A postal clerk testified that while the defendant Reina usually picked up the mail at the post office box, on occasion other employees of the company did so. It was also shown that Reina had been friendly with DiStefano for many years.

During the trial, Reina moved for a severance on the basis that if DiStefano were called to the stand, he would testify that when the checks had been presented to Rodriguez, they were not endorsed. The motion for severance was refused, and DiStefano did not testify.

After the jury returned guilty verdicts against Reina and DiStefano[3] on March 15, 1972, motions for new trial were filed and at a later date, April 21, 1972, were argued before the district court. At the conclusion of the argument, defense counsel advised the court that he had just received a letter from the prosecutor stating that the state's attorney for Hillsborough County was in possession of evidence which would be helpful to Reina.

On May 30, 1972 Reina filed another motion for acquittal or for a new trial on the basis that Rodriguez's testimony had been perjured. The motion asserted that the state's attorney had recently uncovered evidence showing that DiStefano had been alone when he appeared at the bank, that when the checks had been presented, they were not endorsed, but that at a later time, at the direction of Rodriguez, one Adelaide Lee had in fact written "Garcia's" name on the back of the checks.

An evidentiary hearing was held in the district court on June 19, 1972 at which Mrs. Lee testified that the signature of "Garcia" on one check was in her handwriting and that probably it was her handwriting on the other check also.

Rodriguez invoked the Fifth Amendment and did not testify, but the sworn statement he had given to the state's attorney on May 23 and May 26, 1972 admitted that DiStefano had been alone on both occasions and that the checks had not been endorsed at the time Rodriguez had received them.

The district court denied the motion for new trial on the ground that "The proferred new evidence does not alter the four basic factual propositions of the Government's case against Reina, but rather one of the two corroborative propositions. Consequently, though the new evidence meets the materiality requisite, it is no more than cumulative of Reina's involvement."

We reverse and grant a new trial.

■ The district court outlined the government's basic evidence against Reina as follows:

1. The first check was mailed to the post office box.
2. The check was delivered.
3. The defendant "generally" took the mail from the box.
4. The check was next shown to be in DiStefano's possession.

While it may be conceded that the check was mailed and delivered to the Reina Company post office box and was later shown to be in DiStefano's possession, point three, the link between post office box and DiStefano, is somewhat tenuous. There was no evidence to exclude the activities of a third party, perhaps another employee of the Reina Company, as having been the conduit, and there was no direct evidence that the defendant in fact had delivered the check to DiStefano. Hence, there was ample reason for the government to argue as it did during the trial that the testimony tending to show that the defendant wrote "Garcia's" signature on the back of the check provided the link to establish Reina's participation in the transaction.

Furthermore, if the jury believed that the defendant had penned the fictitious endorsement, not only would the gap in the proof be filled, but a strong inference of complicity in additional

---

3. Some other alleged members of the conspiracy were acquitted, and others had pleaded guilty before the trial began.

wrongdoing would be established. It would be highly unlikely in the face of such evidence that a jury could consider the defendant to be a dupe or innocently accommodating a friend. To the average juror, signing a fictitious name to a check is forgery and bespeaks a criminal bent.

Thus, while in a sense it is true that the newly proffered evidence was merely corroborative, in the factual situation of this case it was corroborative of what otherwise would have been a rather weak inference. In no sense, therefore, can this particular phase of the evidence be considered cumulative of other equally strong and reliable evidence. Indeed, it was the strongest and most damaging element in the government's case to connect Reina with the whole conspiracy.

Courts justifiably look upon after-discovered evidence or recantations with skepticism and suspicion and do not generally grant new trials based on such grounds. Nevertheless, when such an important factor in the government's case depends upon perjured testimony, the interests of justice mandate a new trial.

█ Generally, five essential requisites for ordering a new trial on the basis of "newly discovered" evidence have been set out:

1. The evidence must have been discovered after the trial;
2. The failure to learn of the evidence must not have been caused by defendant's lack of diligence;
3. The new evidence must not be merely cumulative or impeaching;
4. It must be material to the principal issues involved; and
5. It must be of such a nature that in a new trial it would probably produce an acquittal.

This has been referred to as the "Berry" test and was adopted by this Court in United States v. Bertone, 249 F.2d 156, 160 (3rd Cir. 1957); United States v. Nigro, 253 F.2d 587 (3rd Cir. 1958).

In this case, however, the motion with respect to the Rodriguez testimony is not really based on "newly discovered" evidence but, rather, on the assertion that the evidence at the trial was perjured.

As is pointed out in 2 Wright, Federal Practice & Procedure, § 557, a different test is applied in the latter situation and what is termed the "Larrison rule" is used.

Professor Moore in 8A Moore's Federal Practice, ¶ 33.06[1], says, "If the trial court finds that a material witness did commit perjury, and without his testimony the jury might not have convicted, a new trial is necessary."

█ Larrison v. United States, 24 F. 2d 82, 87 (7th Cir. 1928), holds that when a contention has been made that a government witness testified falsely at trial, the test should be:

1. The court is reasonably well satisfied that the testimony given by a material witness is false;
2. That without it a jury *might* have reached a different conclusion;
3. That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

It was not until the trial was underway that counsel for Reina first learned that the checks were not endorsed when originally presented to Rodriguez. The district court did not find any lack of diligence on the part of counsel in not launching an immediate investigation; nor do we. From a practical standpoint, the trial was held in Philadelphia, and crucial witnesses were located in Florida. Furthermore, it is apparent that only after the intervention of the state's attorney in Florida with his broad authority was it possible to secure a recantation by Rodriguez and a statement by Mrs. Lee.

It is important in this case, also, that the government does not contest the fact

that Rodriguez did testify falsely at the trial in Philadelphia, nor did the district court conclude that the recantation was not genuine. The denial of a new trial was not based on a finding that no perjury had been committed but, rather, accepting that it had in fact taken place, the testimony was corroborative only. Hence, we may properly review the action of the district court.[4]

We conclude that under the facts in the record in this case whether the *Bertone* ("Berry") or the *Larrison* test is applicable, the burden has been met by defendant Reina. We feel that the impact of the perjury by Rodriguez and the mistaken testimony by the government expert so tainted the original trial that the conviction based on such testimony should not be permitted to stand.

It should be clearly understood that we are not directing a verdict for the defendant Reina; we only state that a new trial should be ordered so that the government may present its case free of erroneous testimony.

### The DiStefano Appeal

The defendant DiStefano also joined in the request for a new trial based on the same after-discovered evidence, and his motion was similarly rejected by the district court. However, we affirm the ruling and agree with the trial judge that by no stretch of the imagination could the corrected testimony of Rodriguez do anything other than further inculpate DiStefano. He can show no prejudice whatsoever, and in fact a new trial which included accurate statements from Rodriguez would only add to the overwhelming evidence against DiStefano.

Our affirmance applies also to the conviction on the fifth count of the indictment at 71–750, charging conspiracy against DeStefano, Reina, and others. In the circumstances of this case, the grant of a new trial as to Reina does not necessitate similar treatment to DiStefano. *Cf.* United States v. Shuford, 454 F.2d 772 (4th Cir. 1971).

The conspiracy count stated generally that, by the payment of money to public officials or members of their families, the defendants planned to defraud the taxpayers of Hillsborough County, Florida in the purchase of voting machines. It was further alleged that used voting machines owned by the county were sold at an inadequate price through the device of collusive bidding.

As to this count, guilty pleas were accepted before the trial on behalf of five of the defendants, namely, Meyers, Hirshorn, Lemisch, Schott and Chenoweth. A plea of *nolo contendere* was accepted as to Shoup Voting Machine Corporation. At the conclusion of the government's case, defendant Grimaldi was granted a judgment of acquittal and the jury acquitted John C. Womack and Southern Municipal Sales, Inc.

The fact that five of the defendants had pleaded guilty was made known to the jury during the trial. Evidence was introduced to show that DiStefano received money from the Shoup Company in the guise of "commissions" and that he exerted his influence as a former county official to bring about the sale. There was testimony that DiStefano had arranged to have $5,000 of his "commission" paid through defendant Chenoweth to one of the county commissioners, and that the defendant was involved in other phases of the scheme.

Thus, we have a situation where a number of the defendants had pleaded guilty to the same conspiracy to which DiStefano was linked by competent evidence. Realistically, therefore, DiStefano's guilt was established without the necessity of Reina's participation in the activity at all. The rationale of United States v. Gordon, 242 F.2d 122 (3rd Cir. 1957), is applicable. Judge Staley, writing for the court, said at page 125:

"However, if the indictment names even persons unknown as co-conspirators, and there is evidence to support

---

4. Cf. United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946).

the charge that one of the two defendants conspired with the unknown persons, that defendant's conviction may stand in spite of the fact that the other defendant was acquitted. [citation]. If the conviction of one defendant may be sustained for conspiring with unknown persons, certainly it may be sustained where the evidence discloses a conspiracy between the defendant and the named co-conspirator, even if the latter is not indicted."

DiStefano's other assertions of error with respect to admission of evidence concerning transactions before the indictment and complaints about the court's instructions on conspiracy are without merit.

As to the defendant Reina, the judgment of the District Court will be reversed and the cause remanded with the direction that a new trial be granted.

The judgments against DiStefano will be affirmed.