**UNITED STATES of America**

v.

**Johnnie WILLIS a/k/a Hogman.**

**Crim. A. No. 77–185.**

United States District Court,
W. D. Pennsylvania.

April 4, 1979.

Robert J.Cindrich, U. S. Atty., Pittsburgh, Pa., for plaintiff.

John L. Doherty, Pittsburgh, Pa., for defendant.

## TRIAL COURT'S FINDINGS UPON REMAND

WEBER, Chief Judge.

While appeal was pending in the Court of Appeals, the Government moved to have the case remanded to the district court because of newly discovered evidence of false testimony by government agents.

The mandate of the Circuit Court of Appeals requires us to hold an evidentiary hearing to assess the materiality of the false testimony provided by Charles Sharpic, a former government drug agent, against the defendant in the trial of the above captioned case. No evidentiary hearing was needed because the United States stipulated to the falsity of the testimony in the particulars considered.

The following are those counts submitted to the jury with the jury's verdict noted parenthetically afterward:

(a) Count 1: Conspiracy to distribute heroin. (Guilty)

(b) Count 2: Unlawful distribution on Feb. 1, 1977. (Not Guilty)

(c) Count 3: Unlawful distribution on Feb. 3, 1977. (Guilty)

(d) Count 5: Unlawful distribution on April 26, 1977. (Guilty)

(e) Count 6: Unlawful possession with intent to distribute on July 20, 1977. (Guilty)

The first item of false testimony involves Sharpic's recount of the events of Feb. 1, 1977. Trial Transcript, pp. 76–77. Sharpic testified that on Feb. 1, 1977 he drove to the residence of an informant, picked up the informant, and proceeded to meet Jerome Motten, a co-defendant who later purchased heroin from Mr. Willis. Sharpic testified falsely when he said that Detective Jack Bare of the Beaver County Detective Squad conducted surveillance of these events. We note that the jury acquitted Mr. Willis of illegally selling heroin on Feb. 1, 1977, and that Detective Bare later testified and was subject to cross-examination by the Defendant.

Second, Agent Sharpic testified falsely when he said that he "may have glanced over" a surveillance report of the drug sale on Feb. 3, 1977 signed by Detective Costanzo, who did not testify, Trial Transcript, p. 143. Regarding this report, the Government informs the Court that Agent Sharpic, if called to testify today, would state that he was present when Drug Enforcement Agent Scheid directed Agent Costanzo to sign the report even though Costanzo was not present at the surveillance the report purported to describe. The report was not admitted as evidence.

We note that Sharpic testified against the Defendant on counts 1, 2, 3, and 5.

Our assessment of the materiality of the false testimony depends on the test we apply. This Court is bound by the ruling of our Court of Appeals in *United States v. Meyers*, 484 F.2d 113 (3d Cir. 1973), which said that, when a contention is made that a government witness has testified falsely at trial, the defendant should have a new trial if—without the false testimony—the jury might have reached a different conclusion. Applying this test to the items of false testimony acknowledged by the Government, we do not believe that the verdict would have been different if the jury had not heard the false statements.

In contrast, the application of the test approved by the Court of Appeals for the Second Circuit in *United States v. Stofsky*, 527 F.2d 237 (2d Cir. 1975), *cert. denied* 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976), takes this Court to a different result. Under *Stofsky*, the trial court should include in

its consideration the potential impact of the fact of perjury by government witnesses on the jury's estimate of their credibility, instead of limiting its consideration to what the verdict might have been if the agents had testified truthfully, 527 F.2d at 245–47. This view draws its rationale from the standard jury instruction commonly given in this Court (although not specifically given here) that, upon finding that a witness had testified falsely in part, the jury may choose to disregard his entire testimony. If the jury had known that Sharpic testified falsely, we believe that they easily could have chosen to disregard his entire testimony or at least to give it substantially less weight; if they had done either, it is clear to the Court that their verdict would have differed. We have two reasons: First, Sharpic was clearly the material government witness. He provided damning testimony against Willis on four of the five counts eventually submitted to the jury. On each of the distribution counts, it was Sharpic who drove Motten to the vicinity of Willis's residence and gave Motten the money for the buy. The only corroboration supplied by a government witness came from former Agent Charles Harvey on only the fifth count when he testified that he accompanied Sharpic and Motten to Willis's residence, Trial Transcript, pp. 63–67. The Court believes that the impeachment of Sharpic's credibility in any regard would have been especially significant to the jury as it certainly would have been to the Court if it were serving as the fact finder.

Second, Motten was the only other witness who provided testimony on the same counts that Sharpic did and Motten's credibility was clearly suspect. A former heroin user whose habit required $100/day financing, Motten testified that he had plead guilty to one count related to the drug sales involved in this case and that four other counts would be dismissed at the time of sentence in exchange for his testimony against Willis, Trial Transcript, p. 29. Furthermore, the jury heard the details of Motten's elaborate rap sheet, particularly, that Motten was convicted, largely by guilty plea, of credit card fraud, larceny, armed robbery, assault with intent to kill, receiving stolen goods, and the illegal sale and possession of narcotics, Trial Transcript, pp. 29–35.

The Court believes that this case presents a factual situation appropriate for the enlargement of the *Meyers* rule to allow the trial judge to consider the effect on the verdict of the disclosure to the jury of false testimony by key government agents. The record in this case suggests other instances of false testimony and misconduct by government agents. The Government has acknowledged that Sharpic would testify that Agent Scheid ordered Detective Costanzo to sign a surveillance report about the February 3 sale which purported to describe a surveillance Costanzo did not conduct. In addition, Sharpic testified that he would produce cash disbursement records showing the amounts of money he paid to Motten for dealing with Willis, Trial Transcript, pp. 139–141, but when recalled later in the trial with the records in hand, Sharpic was forced to admit that the records did not reflect his payments, *id.*, pp. 225–27. These episodes are wholly consistent with a history of conduct by Sharpic and Harvey which led to their guilty pleas in Criminal No. 78–187 for falsifying surveillance records under 18 U.S.C. § 1001, and which led Harvey to plead guilty to illegally distributing heroin under 21 U.S.C. § 841(a)(1); the conspiracy indictments against both under 18 U.S.C. § 371 was dismissed.