**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Stanley Welton MATHIS,
Defendant-Appellant.**

No. 80–2132.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Oct. 1, 1981.

Decided Jan. 14, 1982.

Certiorari Denied May 24, 1982.
See 102 S.Ct. 2275.

Betty Outhier Williams, Asst. U. S. Atty. (now U. S. Atty.), Muskogee, Okl. (James E. Edmondson, Acting U. S. Atty., and G. Steven Stidham, Asst. U. S. Atty., Muskogee, Okl. with her on the brief), for plaintiff-appellee.

Richard C. LaFond of LaFond & Evangelisti, Denver, Colo., for defendant-appellant.

Before McWILLIAMS, BARRETT and SEYMOUR, Circuit Judges.

McWILLIAMS, Circuit Judge.

Stanley Mathis was convicted by a jury of unlawfully transporting a stolen flatbed truck and a farm tractor from Howe, Texas, to Durant, Oklahoma, in violation of 18 U.S.C. § 2314 (1976). It is undisputed that on March 1, 1978, at approximately nine o'clock p. m., a flatbed truck and a farm tractor were stolen from a John Deere farm implements dealership in Howe, Texas. The tractor was driven onto the flatbed of the truck, and the truck, with tractor, was driven to Durant, Oklahoma, where the driver of the truck was arrested and the vehicles were recovered by the local police.

Four men, including Mathis, were allegedly involved in the crime. At Mathis' trial, two alleged accomplices, Gray and Johnson, appeared as government witnesses and testified that Mathis had participated in the theft. Although Mathis did not testify, his defense was that he was not involved in the transaction, and, in that regard, Mathis attempted to establish an alibi for the evening of the theft. It was on this general state of the record that a jury convicted Mathis.

On appeal, Mathis raises several matters, none of which justifies reversal. The first issue pertains to the closing argument of government counsel. As indicated, Mathis sought to establish an alibi by calling several witnesses, whose testimony, when taken together, tended to indicate that on the evening of March 1, 1978, Mathis was in Choctaw County, Oklahoma. Specifically, three defense witnesses testified, in effect, that Mathis was with the sheriff and deputy of Choctaw County on the evening of March 1, 1978, doing undercover police work by attempting to "set-up" a drug purchase. Two of these witnesses were at the time in the county sheriff's office, and the third was a private investigator for a railroad. In cross-examination of the county sheriff and his deputy, the prosecutrix established that a radio log had been kept concerning the actions of the sheriff and his deputy on the evening of March 1, 1978. Without objection by defense counsel, both witnesses were cross-examined, at some length, about the log and how it was made. Both the sheriff and his deputy stated that they had not checked the radio log prior to testifying at Mathis' trial. On redirect examination of the sheriff, the sheriff conceded that the radio log would reflect accurately all information that had been called in, although he noted that the possibility always existed that the sheriff or his deputies, in a given case, might fail to call in as they should. Despite these references to a radio log, neither the government nor the defense offered the log into evidence. It was in this factual setting that government counsel made certain comment which Mathis now claims requires a reversal.

In her closing argument, government counsel initially made no reference to Mathis' alibi witnesses, or the radio log, but instead concentrated on establishing the credibility of the government's two key witnesses, Johnson and Gray, both of whom, as indicated, were alleged accomplices of Mathis.

In his closing argument, defense counsel, no doubt believing that certain statements made during the cross-examination of the sheriff and the deputy suggested to the

jury that the radio log might contradict their testimony, made the following comments concerning the radio log:

Where is it? Where is the radio log that she wanted to try to scare these people off their testimony with, and shake them up by suggesting that maybe they had—

The prosecutrix objected to the foregoing statement on the ground that the radio log was not in evidence. The trial judge thereupon gave a general admonition to the jury. Defense counsel then concluded his comments by asserting that any suggestion of inconsistency between the testimony of the sheriff and his deputy and the radio log was not supported by anything in evidence, and that, accordingly, the alibi testimony was uncontradicted.

In her rebuttal, the prosecutrix stated that, unlike defense counsel, she did not accuse any witness of perjuring himself. She conceded that Mathis undoubtedly had on occasion assisted the sheriff of Choctaw County in undercover police work, but suggested that the sheriff and his deputy were mistaken when they indicated that they were with Mathis on the evening of March 1, 1978. Specifically, the prosecutrix made the following statement:

Ladies and gentlemen, there is no reason to believe that Stanley Mathis didn't do an undercover buy for the sheriff. He did it sometime after Lang gave the sheriff $30, $30 which the sheriff never used for that purpose. And a year and a half later, it's very easy to see how the sheriff, who kept no records, might think it was that Wednesday when, in fact, it was Friday or Saturday. They told you who they were with. Did you notice one other thing about their times? Sheriff Buchanan didn't even start his buy until Undersheriff Akins was already off work. One of them started it at approximately 11:00, where the other one went off work at 11:00. They were both confused as to who was with whom when. *But neither one of them doubted what the log itself said, or that the log was kept, or that the log was probably an accurate reflection of what was radioed in to the dispatcher.* (emphasis added).

At this point in the prosecutrix's rebuttal argument, defense counsel objected on the ground that the radio log was not in evidence, and that *any* reference thereto was improper. In response to such objection, the trial judge spoke as follows:

Well, there has been some question about the log. I don't think the log itself is offered in evidence. But there was some questioning about the log, and [if] what you are speaking about has to do with what is evidence, then you may consider it. Otherwise, you may not.

As stated, Mathis' first ground for reversal is based upon the prosecutrix's reference, in closing argument, to the radio log. Such comment, asserts defense counsel, alluded to a matter not in evidence and, under the Fifth Amendment, constituted a denial of due process. We disagree.

■ In the first place, we do not believe the statement of the prosecutrix, which consists of only *one* sentence, was, under the circumstances, improper. Without objection, both the sheriff and his deputy had been cross-examined as to the existence of a radio log, how it was kept, and whether either had referred to it before testifying at Mathis' trial. Such being the state of the record, we think that the comment of the prosecutrix in her closing argument was not outside the record, but inside it. *See United States v. Jones*, 482 F.2d 747, 753 (D.C. Cir.1973).

Even if there was error which was not adequately corrected by the trial court in its instructions, such would, in our view, be so trivial that it would not rise to constitutional proportions. There is no per se rule mandating reversal of a conviction in all cases where a prosecutor goes outside of the record in closing argument. *United States v. Splain*, 545 F.2d 1131, 1135 (8th Cir. 1976); *Devine v. United States*, 403 F.2d 93, 96 (10th Cir. 1968), *cert. denied*, 394 U.S. 1003, 89 S.Ct. 1599, 22 L.Ed.2d 780 (1969). Each case should be examined independently with a view toward ascertaining whether there is reason to believe that such statement affected the ultimate verdict of the

jury. *See also, United States v. Greene,* 497 F.2d 1068, 1085 (7th Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975). And in *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974), the Supreme Court stated that not every trial error or infirmity constitutes a failure to observe that fundamental fairness required by the Constitution.

Mathis' second ground for reversal is rather different. After the jury found Mathis guilty, an Assistant United States Attorney, who had not himself tried the case, filed with the trial court a motion to set aside Mathis' conviction and to enter a judgment of acquittal, on the ground that Gray and Johnson, the two government witnesses who had implicated Mathis, had committed perjury. This motion was based solely on the fact that Mathis had "convinced" the Assistant United States Attorney that the alleged accomplices, Gray and Johnson, had perjured themselves. *After,* but not *before,* filing his motion, the Assistant United States Attorney instructed FBI agents to contact Gray and Johnson. Despite a promise of no prosecution for perjury should they recant their trial testimony, both Johnson and Gray refused to change their stories about the theft. As a result of these new interviews, the Assistant United States Attorney apparently changed his mind and determined, to his own satisfaction, that there had been no perjury. A report of these interviews was given to the trial court. When the motion to set aside the verdict came on for hearing, the government offered no evidence to support its earlier charge of perjury. Because of the government's inability to furnish the court with any documentation to support the allegation of perjury, the trial court denied the motion, with the comment that under the circumstances the jury verdict and the sentence imposed thereon should not be disturbed by the court. Mathis now asserts that such ruling constitutes reversible error. We do not agree.

██ Just why the Assistant United States Attorney blew "hot and cold" on this matter is not apparent from the record before us. Perhaps there is an explanation. The fact remains that at the time of the hearing on the motion to set aside the verdict, the government had no evidence of perjury, other than Mathis' belief that he had been convicted on perjured testimony. We are in accord with the trial court's finding that under such circumstance the jury verdict should not be disturbed. *United States v. Jackson,* 579 F.2d 553, 556–57 (10th Cir. 1978); *United States v. Briola,* 465 F.2d 1018, 1022 (10th Cir. 1972). *See also, United States v. Mackin,* 561 F.2d 958, 961 (D.C.Cir.1977); *United States v. Brashier,* 548 F.2d 1315, 1327 (9th Cir. 1976); *United States v. Tourine,* 428 F.2d 865, 870 (2d Cir. 1970).

The cases relied upon by appellant Mathis, *Mesarosh v. United States,* 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956), and *United States v. Willis,* 606 F.2d 391 (3d Cir. 1979), are inapposite. In *Mesarosh,* the Supreme Court remanded the case for a new trial because *evidence* surfacing *subsequent to* the original trial demonstrated that a key government witness in Mesarosh's trial had lied repeatedly before other governmental tribunals. Although the Court did rely upon the Solicitor General's personal belief in the witness's untruthfulness, the Court was presented also with ample documentary evidence of the witness's untruthfulness. 352 U.S. at 4–7, 77 S.Ct. at 2–4. In contrast, no *evidence* demonstrating that either Johnson or Gray had committed perjury has surfaced. Furthermore, the veracity of both Johnson and Gray was presented to the jury during Mathis' trial, particularly during cross-examination by defense counsel. As we have held previously, *Mesarosh* requires "only that the issue of the truthfulness of the witnesses be presented fully to the jury." *United States v. Davis,* 473 F.2d 1023, 1025 (10th Cir. 1973). It is doubtful that mere hints of perjury, or even an Assistant United States Attorney's belief of perjury, warrants reversal of a conviction when, as here, the issue of the truthfulness of the alleged perjurers was presented to the jury. This would appear especially true when the United States At-

torney's belief is premised upon conversations with the convicted felon.

The *Willis* case is also distinguishable. While Willis' conviction was being appealed to the Third Circuit, the United States Attorney filed a motion to remand to the district court for the limited purpose of holding an evidentiary hearing on allegations of perjury and misconduct by government witnesses, several DEA agents. Such motion was granted, but no hearing was held because the government and the defense attorneys stipulated to the substance of the false testimony and general misconduct of the DEA agents. The trial court found that a clearly material government witness, one of the DEA agents, had testified falsely and that if the jury had known of the perjury, their verdict would have been different. *United States v. Willis*, 467 F.Supp. 1111, 1112 (W.D.Pa.1979). The Third Circuit approved such finding and, on a subsequent motion by the United States Attorney, the court remanded the case to the district court for vacation of the conviction and dismissal of the indictment. *United States v. Willis*, 606 F.2d 391 (3d Cir. 1979).

In relying on *Willis*, Mathis fails to note that there was real evidence before the trial court and that the court therefore did not act upon the word of the government alone. In contrast to the letter forwarded to the court below outlining the FBI's failure to elicit confessions of perjury from Johnson and Gray, the *Willis* court was informed of the fact that if one of the DEA agents was called to testify, he would have admitted to the falsification of surveillance records. Furthermore, two DEA agents pled guilty to a charge of falsifying records.

Finally, the suggestion that we should set aside the verdict under the broad powers provided in 28 U.S.C. § 2106 (1976) is unavailing. That statute does indeed provide that we *may* vacate or set aside a judgment on appellate review, but we must have a legal or equitable reason for so doing. Because no such reason here exists, we affirm.

Judgment affirmed.