

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-26-2005

# USA v. Williams

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3498

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation
"USA v. Williams" (2005). *2005 Decisions.* Paper 1129.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1129

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>**NOT PRECEDENTIAL**</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-3498

———————

UNITED STATES OF AMERICA

v.

SEBASTIAN WILLIAMS

Appellant

———————

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW JERSEY

(Dist. Court No. 02-cr-00935-2)
District Court Judge: The Honorable Garrett E. Brown

———————

Submitted Under Third Circuit LAR 34.1(a)
November 4, 2004

Before: ALITO, BARRY, and FUENTES, <u>Circuit Judges</u>

(Filed: May 26, 2005)

———————

OPINION OF THE COURT

———————

<u>PER CURIAM</u>:

Because we write only for the parties, we do not set forth the facts of this case. Sebastian Williams ("Williams") appeals following his conviction by a jury and sentence imposed by the District Court. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). For the reasons stated below, we affirm the conviction, vacate the sentence and remand for re-sentencing in accordance with <u>United States v. Booker</u>, 543 U.S. __, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

## I.

On appeal, Williams raises six different issues regarding his conviction. We will address each issue in turn.

## A.

First, Williams argues that the District Court erroneously denied his motion for a new trial due to the fact that there were two "critical pieces" of evidence discovered post-trial that satisfied the test for ordering a new trial based on newly discovered evidence. The first piece of evidence, according to Williams, was the possibility that a second weapon was fired by co-conspirators Dwayne Jones ("Jones) or Louis Hyman ("Hyman") during the August 2002 attempted robbery. The second piece of evidence, according to Williams, was Henry's medical record indicating he had been on drugs during the time he committed the August 2002 attempted robbery.

According to <u>U.S. v. Meyers</u>, 484 F.2d 113 (3d Cir. 1974), there are five essential

2

requirements for ordering a new trial based on newly discovered evidence. These five

requirements are: (1) the evidence must have been discovered after trial; (2) the failure to

learn of the evidence must not have been caused by the defendant's lack of diligence; (3)

the new evidence must not be merely cumulative or impeaching; (4) the new evidence

must be material to the principal issues involved; and (5) the new evidence must be of

such a nature that a new trial would probably not produce an acquittal. Id. at 116. If a

defendant is unable to prove any one of these five requirements, his request for a new trial

on the basis of newly discovered evidence must be denied. U.S. v. Ianelli, 528 F.2d 1290

(3d Cir. 1976).

A ruling regarding a motion for a new trial based on new evidence is reviewed

under an abuse of discretion standard. U.S. v. Adams, 759 F.2d 1099, 1108 (3d Cir.

1984). Here, the District Court did not abuse its discretion when it found that Williams

failed to meet the five requirements for a new trial.

As an initial matter, neither piece of evidence was new. Williams was aware that

the Coin Depot Corporation ("CDC") guard had testified that one of Williams' co-

conspirators had a gun. Williams was also aware, through discovery turned over by the

government, that Henry was a drug user. It was Williams' failure to diligently follow up

on these two pieces of evidence, rather than his lack of awareness of the issues, that

resulted in his inability to use this evidence at trial.

In addition, even supposing the evidence had not been available to Williams at

3

trial, it is not probable that it would have produced an acquittal. The record indicates that both Jones and Henry were vigorously impeached by Williams' defense at trial. The jury heard evidence of their prior false statements, their cooperation agreements, prior convictions, and in Henry's case, his drug use. Despite the defense's impeachment of Jones and Henry, the jury chose to believe their testimony regarding Williams' participation in the armed car robberies.[1] It is, therefore, highly unlikely that additional credibility evidence such as the fact that Jones potentially lied about using a gun or that Henry was on drugs the day of the attempted robbery, would have altered the jury's decision to believe their testimony.

Because Williams failed to prove any of the five requirements necessary for a new trial, the District Court's decision on this issue must be affirmed.

B.

Next, Williams contends that the District Court erred in denying his motion for a new trial because the government failed to provide him with evidence that was material to his defense in violation of <u>Brady</u>. We disagree.

<u>Brady v. Maryland</u> holds that the suppression of exculpatory evidence by the government that is material to the outcome of the trial violates a defendant's right to due

---

[1] The jury's reliance on Jones' and Henry's testimony was understandable in light of the fact that the two witnesses corroborated each other's testimony despite their lack of communication immediately following the attempted robbery and in light of the fact that their testimony was supported by evidence of massive unexplained cash expenditures by Williams shortly after the March 2002 robbery.

4

process. 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence is considered material when "there is a reasonable probability that, had [the evidence] been disclosed [to the defense,] the result of the proceeding would have been different." U.S. v. Perez, 280 F.3d 318, 348 (3d Cir.), *cert. denied,* 537 U.S. 859 (2002).

We must review the District Court's denial of a motion for a new trial based on a failure to disclose Brady material under a clearly erroneous standard for findings of fact. U.S. v. Price, 13 F.3d 711, 722 (3d Cir. 1994). We cannot find that the District Court's denial of Williams' Brady motion was clearly erroneous. The District Court rightfully found that the government did, in fact, turn over or make the defense aware of all the evidence it had relating to Jones' potential gun possession during the attempted robbery and Henry's drug use. Moreover, the District Court was correct to conclude, for the reasons discussed above, that the evidence Williams now seeks is merely additional impeachment material that would not have altered the outcome of the trial. As a result, the District Court's denial of William's Brady motion must be affirmed.

C.

Williams contends that the District Court erred when it failed to grant his motion to suppress evidence seized by FBI agents in his Brooklyn apartment, his 1998 Mercedes SUV, and a storage unit in Queens rented by his girlfriend, Vanessa Lake ("Lake"). Williams argues that neither his consent nor Lake's consent was voluntarily given. Williams contends that his consent was involuntary because law enforcement officials

5

asked him if they could search his premises and vehicle while he was handcuffed, face-down, and surrounded by FBI agents who had their guns drawn and threatened to arrest Lake if he did not agree to the search. Williams also states that at no time was he made aware that he did not have to sign the consent form.

A search without a warrant can be conducted if, under the totality of the circumstances, the officers have obtained voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect?" U.S. v. Kim, 27 F.3d 947, 957 (3d Cir. 1994).

This Court reviews motions to suppress based on a mixed standard. This Court may reverse the District Court's findings of historical fact only if they are clearly erroneous. U.S. v. Inigo, 925 F.2d 641, 656 (3d Cir. 1991). The District Court's determination of whether a statement was voluntary is subject to plenary review. Id. The District Court found the testimony of the agents regarding the voluntariness of Williams' and Lake's consent to search credible. Three different agents testified that Williams was not face-down or threatened by guns when he was asked to sign the consent form. The agents testified that Williams appeared calm in the custodial situation and was specifically advised that he could refuse consent. The agents also denied telling Williams

6

that his girlfriend would be incarcerated if he refused the search.

With respect to Lake's consent, the agents testified that, although Lake was not free to leave the vehicle she was driving during Williams' arrest, she did not express any reservation about signing the consent form and did not appear frightened. The agents also testified that no weapons were drawn in her immediate vicinity. The District Court's decision to credit the testimony of three FBI agents over Williams' narrative of the events was not clearly erroneous. Moreover, given these facts, we cannot say that either Williams' or Lake's consent was involuntary.

D.

Next, Williams argues that the prosecutor engaged in misconduct during closing argument when he improperly vouched for the credibility of co-conspirators Jones and Henry, thereby shifting the burden of proof to the defense. We disagree.

Prosecutorial misconduct results in a violation of due process when the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). With respect to improper vouching, two criteria must be met: "(1) the prosecutor must assure the jury that the testimony of a government witness is credible; and (2) this assurance is based on either the prosecutor's personal knowledge, or other information not contained in the record." U.S. v. Walker, 155 F.3d 180, 187 (3d Cir. 1998). A prosecutor does not transgress these boundaries, however, when he "comment[s] on the

7

failure of [defense counsel] to point to any evidence in the record supporting his theory of what occurred." U.S. v. Balter, 91 F.3d 427, 441 (3d Cir. 1996). It is proper for a prosecutor to "attempt [...] to focus the jury's attention on holes in the defense's theory." Id.

Prosecutorial remarks as to which no objection has been made at trial are reviewed only for plain error. Walker, 155 F.3d at 187. "In order to be plain error, an error must not only be 'obvious,' it must 'have affected the outcome of the District Court proceeding.'" Id. (quotation omitted). Here, Williams has not met the heavy burden of establishing plain error. The prosecutor in his closing argument repeatedly asked the jury to revisit the testimonial evidence in order to assess whether there would be any reason why Jones and Henry would independently lie about Williams' participation in the armed robberies. In doing so, the prosecutor was permitted to highlight the lack of evidence put on by Williams that would indicate what motive Jones and Henry had to be untruthful. In addition, at no time did the prosecutor base his questions on personal knowledge or evidence not presented at trial. Because the prosecutor's remarks regarding the credibility of Jones and Henry were proper, we cannot say that his comments constituted a violation of Williams' due process rights.

E.

Williams argues that the District Court erred in denying his motion for judgment of acquittal because no credible evidence was presented that he engaged in a conspiracy to

commit the August 2002 attempted robbery.

Challenges to the sufficiency of the evidence of a criminal conviction are reviewed in the light most favorable to the verdict, crediting every inference that could have been drawn in its favor. U.S. v. Riddick, 156 F.3d 505, 509 (3d Cir. 1998). A verdict must be sustained "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." U.S. v. Dent, 149 F.3d 180, 187 (3d Cir. 1998) (quotation omitted). In making this determination, this Court does not weigh the evidence or determine the credibility of the witnesses. Id.

In order to obtain a conspiracy conviction pursuant to 18 U.S.C. § 1951, the prosecution must prove that the defendant conspired to obstruct, delay, or affect commerce by robbery. The elements of a conspiracy are: (1) a shared unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work together toward that goal. Perez, 280 F.3d at 342. Upon reviewing the evidence in the light most favorable to the government, it becomes apparent that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The record reveals that, despite Jones' and Henry's lack of contact with each other immediately following the robbery, both testified consistently and in detail regarding Williams' role in the two conspiracies.[2]

---

[2] Details that both Jones and Henry testified to included: Williams asking them to participate in robbing the armored truck, Williams' participation in the surveillance in New Jersey, Williams driving others on and near the Newport Mall grounds at the time of

F.

Finally, Williams argues that the government violated his constitutional rights when it executed an arrest warrant two days after the ten day time limit set out in Federal Rule of Criminal Procedure ("Fed. R. Crim. P") 41.

Fed. R. Crim. P. 41 governs search warrants. Here, Fed. R. Crim. P. 4, which governs arrest warrants, is the applicable provision, and Fed. R. Crim. P. 4, unlike Fed. R. Crim. P. 41, does not require execution within a specified time period. The difference in the two rules reflects a sound policy since "[t]he concept of staleness is important in determining probable cause for a search but is not generally applicable to the showing required to issue an arrest warrant." U.S. v. Tehfe, 722 F.2d 1114, 1119 (3d Cir. 1983). Because Williams' argument that the arrest warrant should have been executed in ten days is without merit, the District Court's decision to deny Williams' motion to dismiss the indictment must be affirmed.

III.

In 2003, Williams was sentenced to a term of 224 months by the District Court pursuant to the United States Sentencing Guidelines. Williams raises several issues on appeal regarding his sentence. In light of Booker, we vacate Williams' sentence and remand to the District Court for resentencing in accordance with that decision.

---

the attempted robbery, and Williams playing the part of a getaway driver in the attempted robbery, to name a few.

10